# Cases

---

THE NORTH BRITISH AND MERCANTILE INSURANCE COMPANY OF LONDON AND EDINBURG, Appellant, v. THE CENTRAL VERMONT RAILROAD COMPANY and Others, Respondents.

*Common carrier — limitations as to liability in bills of lading — time for commencing an action for damages because of injury to goods shipped — three months is reasonable — a delay of nearly three years is fatal.*

A limitation contained in a bill of lading, to the effect that the carrier shall not be liable for any loss sustained "unless written claim for the loss or damage shall be made to the person or party sought to be made liable, within thirty days, and the action in which said claim shall be sought to be enforced shall be brought within three months after the said loss or damage occurs," is a reasonable one, and a delay of nearly three years in bringing suit for such a loss is fatal to the plaintiff's right of recovery therein.

In an action brought by a fire insurance company to recover the amount which it had been compelled to pay as an insurer of certain grain which was destroyed by fire while in possession of the defendants, it appeared that part of the grain was received for shipment by the defendants under a bill of lading which exempted them from all liability for loss by fire unless occasioned by their negligence or that of their servants; and that subsequently the bill of lading was assigned to the person to whose rights the plaintiff had succeeded and who owned the grain at the time the loss occurred.

*Held,* that as the plaintiff's claim was derived by subrogation or assignment, it was subject to any defense that existed against its assignor;

That, as the assignor had knowledge of the conditions under which the defendants received and carried freight, and had actually received part of the grain shipped under such bill of lading, and had directed the rest to be held to await his order, he may be said to have ratified the conditions of the bill.

Where a bill of lading provides that, in case of loss or damage of any of the goods named in it for which any carrier under the same would be liable, the carrier shall have the benefit of any insurance by or for account of the owner of such goods, no cause of action accrues by subrogation, to an insurance company issuing such policy, nor can one be assigned by the owner of the goods to the insurance company against the common carrier.

APPEAL by the plaintiff, The North British and Mercantile Insurance Company of London and Edinburg, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of St. Lawrence on the 6th day of May, 1895, upon the report of a referee dismissing the plaintiff's complaint with costs.

*Lawrence Russell,* for the appellant.

*Louis Hasbrouck,* for the respondent Central Vermont Railroad Company.

*Alric R. Herriman,* for the respondent Ogdensburg and Lake Champlain Railroad Company.

*Charles G. Idler,* for the respondent Ogdensburg Terminal Company.

PARKER, P. J.:

The grain, for the loss of which this action is brought, except 10,120 bushels of corn belonging to Harvey & Co., and which was shipped under a Montreal bill of lading, and also except so much as is known as the Hurlbut grain, was in the possession of the defendants as common carriers under bills of lading containing provisions which exempted them from damages for loss occasioned by fire unless caused by the negligence of such defendants or their servants.

It is claimed that as to a certain lot of the grain shipped by Peavey & Co., in the schooner *Hecla,* the bill of lading was delivered to them under such circumstances that they were not bound by the conditions in it limiting the common-law liability of the defendants, and that, hence, for the loss of that grain no negligence need be proven. If it be conceded that Peavey & Co. had no knowledge of the terms and conditions in the bills of lading under which it was the custom of these defendants to carry grain, and that they did not

receive it until after the vessel had sailed, and that it was too late then to object to such conditions, nevertheless, Chandler had long dealt with them and had knowledge of all the limitations and conditions under which they received and carried freight, and of their methods of transporting the same from Chicago east. Chandler purchased the whole 50,000 bushels shipped by Peavey & Co. in the *Hecla*, and took an assignment of such bill of lading. Twenty-one thousand bushels of that amount were carried through by the defendants to Boston under such bill of lading and delivered to him. The other 29,000 bushels were, by Chandler's express directions, held in the elevator at Ogdensburg awaiting his order. Such order, given after he had received the bill of lading, and was aware of its contents' was, I think, a ratification of all the terms thereof by him. From that time on it was, as between Chandler and the defendants, a valid contract, and as against him the defendants may avail themselves of all the conditions therein contained.

As to all the other bills of lading, they were received by shippers who had long dealt with the defendants and who had knowledge of their contents; and I have no doubt but that they were valid and existing contracts as between them and the defendants.

As to the Hurlbut grain, it was held by defendants as warehousemen.

The referee has found that the fire was not caused by the negligence of the defendants. After a careful examination of the evidence, I am of the opinion that such conclusion is correct and should not be disturbed by this court. This finding, in itself, would be a complete defense to the plaintiff's claim for all but the 10,120 bushels of corn were it not for the fact that prior to the fire Chandler had ordered out of the elevator and directed to be forwarded some 38,400 bushels of grain belonging to him, and that the defendants had negligently omitted to send it forward. Such amount of grain was of the value of $18,244.50, and owing to such neglect it was all consumed by the fire, and Chandler thereby suffered damage to that amount.

It is for the loss occasioned by the destruction of this grain and for the 10,120 bushels of corn only, that any action can be sustained, and as to this, the question is, whether the bills of lading under which it was held by the defendants at the time of the fire, contained

in them any conditions which operate as a defense to the plaintiff's claim.

Although the grain was in the elevator at Ogdensburg it must, I think, under the circumstances and method by which the business was done, as described in the referee's report, be deemed still "*in transitu*," and the bills of lading to still furnish the measure of the defendants' liability. It was still in their possession as common carriers and not as warehousemen.

One of the conditions of the "Boston bills of lading," so called, was to the effect that the defendants should not be liable for any loss sustained "unless written claim for the loss or damage shall be made to the person or party sought to be made liable within thirty days, and the action in which said claim shall be sought to be enforced shall be brought within three months after the said loss or damage occurs." It appears by the tenth finding of fact that all of Chandler's grain destroyed was received in the elevator under the "Boston bills of lading" except 4,000 bushels which were received under a "Montreal bill of lading." But on August 9, 1890, when such 4,000 bushels were sold to Chandler by the original shipper from Chicago, Harvey & Co., he, Chandler, ordered out of the elevator that 4,000 bushels, and a new "Boston bill of lading" was on that day issued to him for the same, and such 4,000 bushels were a part of that which was negligently delayed and therefore lost.

Hence it appears that at the time of the fire all the grain so ordered forward was in the possession of the defendants under "Boston bills of lading" containing the contract above specified. This action for the loss of this grain was not commenced until September 3, 1893, nearly three years after the fire, which occurred September 9, 1890. This delay in bringing suit seems to be fatal to the plaintiff's right to recover for such grain in this action. That such a limitation is a reasonable one is held in *Central Vt. R. Co.* v. *Soper* (59 Fed. Rep. 879), with reference to this very fire, and to bills of lading precisely like the ones before us ; and with this conclusion I concur. A common carrier may lawfully make such a contract limiting the right of action against it, if the time specified is a reasonable one. (*Jennings* v. *G. T. R. Co.*, 127 N. Y. 438, 451. See, also, *Ripley* v. *Ætna Ins. Co.*, 30 id. 136; *Roach* v. *N. Y. & E. Ins. Co.*, Id. 546.; *Mayor of N. Y.* v. *Hamilton F. Ins. Co.*,

39 id. 45.), The plaintiff's cause of action for the grain so ordered forward is derived from Chandler by subrogation or assignment, and of course the rights so acquired are subject to any defense that existed against him.

For this reason, therefore, it would seem that no action can be maintained by the plaintiff for the loss of the grain so ordered forward and lost to Chandler by the negligent delay of the defendants.

As to the 10,120 bushels of corn owned by Harvey & Co., inasmuch as the bill of lading under which it was shipped did not limit the common-law liability of the defendants for its loss by fire, no negligence was necessary to be proved against them in order to recover for such loss. But there was a provision in such bill of lading to the effect that, " in case of loss or damage of any of the goods named in this bill of lading, for which any carrier under same may be liable, that they should have the benefit of any insurance by or for account of the owners of such goods."

This plaintiff claims to recover for the loss of such corn, because, having insured Harvey & Co. for its loss, it has been subrogated to their claim against the defendants for the loss, and having paid Harvey & Co. the amount so insured they have received from them such an assignment of their claim.

But by reason of the contract in the bill of lading, the insurance so made to Harvey & Co. was for the benefit of these defendants, and under such circumstances no cause of action accrues by subrogation, or can be assigned, to the insurer against the common carrier. That rule is clearly held in the following cases: *Pratt* v. *The Richmond, York River, etc., Railroad Co.* (108 N. Y. 358); *Fayerweather* v. *Phenix Ins. Co.* (118 id. 324); *Phœnix Ins. Co.* v. *Erie & Western Trans. Co.* (117 U. S. 312); *Liverpool & Great Western Steam Co.* v. *Phenix Ins. Co.* (129 id. 397); and hence the plaintiff has not established a cause of action for the loss of the corn in question.

So also the so-called " Boston bills of lading," under which all the rest of the grain in this case except the Hurlbut grain was shipped, contained a similar provision, and inasmuch as the plaintiff's claim to recover for such grain is based solely upon a similar subrogation and assignment from the owners Chandler and

Harvey & Co., another reason is apparent why it cannot recover therefor.

I do not find any error in the rulings upon the trial that warrants a reversal of the judgment, and am, therefore, of the opinion that the judgment should be affirmed.

All concurred.

Judgment affirmed, with costs.