URSULA BRIGHT S. S. CO., Limited, v. AMSINCK et al.

(District Court, S. D. New York. May 2, 1902.)

1. MARINE INSURANCE—PARTIAL LOSS—INSURER'S LIABILITY.

    In case of a partial loss of goods covered by a valued marine policy, the measure of the insurer's liability is the proportion which the loss bears to the sound value at the port of discharge.

2. SAME—CARRYING GOODS ON DECK—INSURING PARTIAL LIABILITY—AMOUNT OF RECOVERY.

    Where the owners of a steamship insured a part only of their liability for carrying goods on deck under a valued policy reciting that the goods were valued at the sum for which the insurance was effected, which was less than the actual value, on a total loss the insurers were liable for the amount of the policy, which was in the nature of liquidated damages, and were not entitled to any deduction by reason of the fact

that the shipowners settled their liability for less than the value of the goods.[1]

**8. Same—Subject of Insurance.**

A carrier's liability for carrying goods on deck is a proper subject of marine insurance.

Convers & Kirlin, for libelant.

Butler, Notman, Joline & Mynderse, for respondents.

ADAMS, District Judge. This is an action upon a policy of marine insurance, issued by the respondents in the city of New York on the 30th day of March, 1898, to Frank R. Whitson, on account of whom it might concern, on 879 barrels of cotton-seed oil, to be laden on the deck of the steamer "Ursula Bright" on a voyage from Philadelphia to Rotterdam. The sum insured was $10,000, and the oil was valued (premium included) at that sum. The material parts of the policy are as follows:

"Touching the adventures and perils which the said ASSURERS are contented to bear, and take upon themselves, in this voyage, they are of the seas, men-of-war, fires, enemies, pirates, rovers, thieves, jettisons, letters of mart and countermart, reprisals, takings at sea, arrests, restraints, and detainments of all kings, princes, or people, of what nation, condition or quality soever, barratry of the Master and Mariners, and all other perils, losses, and misfortunes, that have or shall come to the hurt, detriment or damage of the said goods and merchandise, or any part thereof. AND in case of any loss or misfortune, it shall be lawful and necessary to and for the assured, their factors, servants, and assigns, to sue, labor, and travel for, in and about, the defense, safeguard, and recovery of the said goods and merchandises, or any part thereof, without prejudice to this insurance; nor shall the acts of the insured or insurers, in recovering, saving and preserving the property insured, in case of disaster, be considered as a waiver or an acceptance of an abandonment; to the charges whereof, the said ASSURERS will contribute according to the rate and quantity of the sum herein insured; having been paid the consideration for this insurance by the assured, or their assigns, at and after the rate of Two per cent. net. * * * Provided always, and it is hereby further agreed, That if the said assured shall have made any other assurance upon the premises aforesaid, prior in day of date to this policy, then the said ASSURERS shall be answerable only for so much as the amount of such prior assurance may be deficient towards fully covering the premises hereby assured. * * *"

Upon the voyage there was a total loss of the oil by sea perils and jettison, and Whitson, by an indorsement on the policy, ordered that the loss be paid to the libelant. The latter sues to recover the sum insured.

Several defenses were at first interposed by the respondents, but all were finally withdrawn excepting one, set up in the eighth article of the answer, to the effect that the respondents are not liable for any greater part of the sum insured than is equal to the proportion existing between an amount paid by the libelant to the consignees of the oil in settlement of a claim of loss through the shipment having been made on deck and the true value of the oil, which proportion, it is alleged, does not exceed 80 per cent. This defense is based upon the following facts: At the end of March, 1898, the steamer was loading a general cargo at Philadelphia for Rotterdam, under a charter party dated December 6, 1897, between the libelant and C. B.

[1] See Insurance, vol. 28, Cent. Dig. § 1240.

Richard & Co. This charter did not authorize the shipment of a deck load. Whitson, the master of the vessel, was induced, however, by the charterers to take the oil on deck upon their engagement to procure this insurance as a protection to the vessel and her owners against any liability that might arise from the method of shipment. It was in conformity with such engagement that the deck load was insured in the valued amount of $10,000. By the terms of the bills of lading under which the oil was carried, it was stipulated that the liability of the shipowner for any loss of oil should be measured by the current value of the oil in Rotterdam on the day of the steamer's entry at the Custom House. The value of 873 barrels of this oil under such stipulation was $14,532.64 or £2,986.5s.

After the arrival of the steamer at Rotterdam, the consignees of the oil instituted proceedings for the recovery of their losses by attaching the vessel's freights. Subsequently they sued their underwriters on policies which they had taken out, and the Dutch Courts gave judgment against the underwriters, on the theory that the loss was within the insurance against barratry. Actions were subsequently brought against the shipowner in London, the libelant here, in the name of the consignees of the oil, but for the benefit and account of the Dutch underwriters, to recover the amount of the loss from the shipowner, upon the ground of its breach of contract in carrying the goods on deck. The amount claimed in this proceeding was £3,000, and the libelant compromised the action upon the advice of counsel, by payment, on the 4th of April, 1900, to the consignees, of the sum of £2,330.

One of the original defenses was that by the terms and conditions of the policy it was provided that, if the assured should have made any assurance upon the oil prior to the policy issued by the respondents, then the respondents should be answerable only for so much as the amount of such prior insurance might be deficient towards covering the goods insured, and that the parties did have other marine insurance prior in day of date to the insurance in question here, and that consequently the respondents were only answerable for so much of the loss, when properly adjusted, as the amount of such prior insurance was deficient. Subsequently, however, this defense was waived, and it was agreed that this insurance should be treated as liability insurance. The following stipulation was made to carry out this agreement:

"The respondents being satisfied that it was the intent of the brokers who applied to them for the policy of insurance herein to secure the benefit thereof to the master and to the shipowner in respect of liabilities incurred by the master, owner or vessel by reason of the fact that certain barrels of cotton-seed oil were received and carried on deck when the bills of lading authorized only carriage under deck. IT IS NOW AGREED by the parties to the action that said policy be considered by the Court as though such intent had been specifically embodied in it, and that the rights and liabilities of the parties in respect of said policy be adjudged accordingly."

The respondents now contend that they are liable only for such proportion of $10,000, the sum insured, as £2,330, the amount paid by the libelant in settlement of the cargo claims, bears to £2,986.5s., the value of the 873 barrels of oil, which proportion would amount to $6,950. For some reason to which my attention has not been

called the action in London was for 873 of the total of 879 barrels that were lost, but the deficiency would only make a trifling difference, and no further consideration need be given to it. The respondents' theory is that when the shipowner effected the settlement in London, its liability then was £2,986.5s., with interest from April 18, 1898, to April 1, 1900, a total of about £3,351 and as it paid only about 69½ per cent. of the loss, thus saving 30½ per cent., the respondents are entitled to the benefit of the salvage, for the reason that the liability is governed by the rule for computing a particular average loss on goods rather than by the rule establishing the right of full recovery where the hull of a ship has an insured value.

The doctrine is well established that, in case of a partial loss of goods covered by a valued policy, the measure of the insurer's liability is the proportion which the loss bears to the sound value at the port of discharge (The London Assurance v. Companhia de Moagens Do Barreiro, 167 U. S. 149, 171, 17 Sup. Ct. 785, 42 L. Ed. 113; International Nav. Co. v. Atlantic Mut. Ins. Co. [D. C.] 100 Fed. 304, 317, 318, 324; Arnould, Marine Ins. [7th Ed.] 340); and if this were a case of partial loss of goods, it would seem that the recovery should be reduced to the proper percentage of the insured value. But it was not a partial loss. The goods were a total loss, and if the owner or consignee of the goods had taken out the insurance he would have been entitled to recover the agreed value. The insurance, moreover, according to the stipulation between the parties, was not upon the goods; it was upon the liability of the shipowner incident to the shipment of the goods on deck. The insured had no interest in the goods, apart from its liability due to the method of carriage; and the underwriters could acquire no interest in the goods by subrogation, as is the case where there is a total loss under a valued policy. Association v. Armstrong, L. R. 5 Q. B. 244, 248. The ordinary rules governing the relations of the parties to the subject of a valued insurance in a marine policy apparently have no application here. The intent, in view of the stipulation, was to indemnify the insured against a particular risk, and the rights and liabilities of the parties must be adjudged accordingly. The liability was incurred, and the loss is ascertained to have been in excess of the stipulated amount of indemnity. The amount of the insurance was determined by the amount of the premiums paid (Post v. Insurance Co., 10 Johns. *79, *84), and it seems that the insured became entitled to recover the loss actually sustained, not exceeding the sum stipulated (16 Am. & Eng. Enc. Law [2d Ed.] 840; 19 Am. & Eng. Enc. Law [2d Ed.] 1052). This is the general principle governing insurance, except in valued policies of the marine class. Though the form of this policy was of a character to fall within the exception, nevertheless it has been agreed that the form does not express the intent, and it must be concluded that, as the policy was an open one, and designed merely to provide against a breach of the carrier's duty, which is a proper subject of insurance (Phœnix Ins. Co. v. Erie & W. Transp. Co., 117 U. S. 312, 6 Sup. Ct. 750, 29 L. Ed.

873; California Ins. Co. v. Union Compress Co., 133 U. S. 387, 10 Sup. Ct. 365, 33 L. Ed. 730), the recovery is not subject to reduction because the whole amount at risk was not insured. And if it be assumed that the policy was not open, but that it was the intent of the parties, under the stipulation, to preserve the valuation of $10,000, as covering the interest of the insured and binding both parties, the result is the same. The object of the insurance being indemnity against loss to the extent of the value of the interest of the insured, the agreement with respect to the value was conclusive as to the amount at risk, and stood, by way of liquidated damages, in lieu of any proof as to the value of the interest. Watson v. Insurance Co., Fed. Cas. No. 17,286 (29 Fed. Cas. p. 433); 19 Am. & Eng. Enc. Law, 1048. Where a value has been agreed upon, and there has been a total loss, it would be obviously inequitable to permit the insurer to escape from the payment of any part of a fixed indemnity, to secure which a corresponding premium was paid by the insured, upon a plea that the insured should be compelled to stand as constructive insurer of any uninsured value of his liability for the actual insurer's benefit (International Nav. Co. v. Atlantic Mut. Ins. Co., supra), unless it clearly appears that such was the intention of the parties, or some rule of law is shown to exist producing the result, which the parties must have had in contemplation when making the contract. I cannot find that there was any intention here to vary from the sum agreed upon to be paid in the event of loss or liability, or that the rule which has been invoked, relating to partial loss of goods, should be considered as embodied in the contract so as to prevent a full recovery. Perfected proofs of loss and interest were presented to the underwriters on the 30th day of June, 1900, and became payable, under the policy, 30 days thereafter.

Decree for the libelant for $10,000, with interest from July 30, 1900.