ANDREW SPADA ET AL., RESPONDENTS, v. THE PENN-
SYLVANIA RAILROAD COMPANY, APPELLANT.

Submitted March 23, 1914—Decided November 19, 1914.

1. Since the passage by congress in 1906 of the "Carmack amend-
   ment" to the Interstate Commerce act (34 *Stat.* 584, *ch.* 3591),
   all questions of a common carrier's liability for loss of and dam-
   age to interstate shipments are to be determined thereunder, and
   this legislation supersedes all the regulations and policies of a
   particular state upon the subject.
2. The effect of the "Carmack amendment," and the decisions of the
   federal courts thereunder, is to nullify the rule laid down in this
   court in *Hill* v. *Adams Express Co.*, 82 *N. J. L.* 373, that the
   mere acceptance by a shipper, without objections, of a receipt or
   bill of lading, from a common carrier, containing a limitation of
   liability, is not conclusive evidence of the shipper's assent to such
   limitations, in so far as interstate shipments are concerned.
3. A provision in a bill of lading that in case of loss or damage oc-
   curring to property consigned to a common carrier, before de-
   livery, claim for such loss or damage shall be made in writing
   within ten days after delivery, is valid in cases of interstate
   shipments, and the acceptance by the shipper of the bill of lading
   containing such provision, constitutes a binding contract on his
   part, and if made with the initial carrier, enures to the benefit
   of the connecting carrier.
4. A provision in an interstate bill of lading that the liability of
   the carrier for loss should be measured by the value of the goods
   at the time and place of shipment, is not unreasonable, and is
   binding upon the shipper if the bill is accepted by him.

On appeal from a judgment of the Hudson Circuit Court.

For the appellant, *Vredenburgh, Wall & Carey.*

For the respondents, *Queen & Stout.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This action was brought to
recover damages for deterioration in the condition of nine car-
loads of watermelons consigned from points in Florida and
Georgia to the plaintiffs at the city of New York; the de-

terioration being averred to have resulted from unnecessary delay in transportation.

The defendant company received each one of these carloads from an intermediate carrier, presumably in good condition, and within a reasonable time after shipment by the initial carrier, the delay occurring after delivery to defendants, and being due to a strike of longshoremen in their employ at their New York freight pier.

Each of the initial carriers of these several carloads of melons executed and delivered a bill of lading therefor to the person representing the consignor in arranging for the shipment. Each of these bills of lading was signed by the agent of the initial carrier who represented it at the place of shipment; but none of them were signed personally by the consignor or by his representative. Five of them contained a provision that in case of loss or damage occurring to the property consigned, before delivery, claim for such loss or damage should be made in writing to the agent at the point of delivery within ten days after delivery, or after due time for delivery, and if not made within that time that the carrier should not be liable therefor. The other four bills of lading contained a provision that in case of loss or damage to the property consigned, for which any carrier should be liable, such loss or damage should be computed on the basis of the value of the property at the place and time of shipment.

At the trial the defendant company claimed that these provisions were binding upon the plaintiffs, and asked the court to so charge. This the court refused to do, and, instead, instructed the jury that whether or not the plaintiffs were bound by these provisions depended upon whether or not they assented to them; that the acceptance of the bills by the shipper without dissent from, or objection to, the provisions thereof, raised a presumption that he knew their contents, and acquiesced therein; but that he could rebut this presumption by showing that he did not know of, and did not assent to, the terms and limitations contained in the bills upon the provisions of which the defendant relies. Having so instructed them, he left it to them to determine whether or not the de-

fendants had overcome the presumption arising from their acceptance of the bills of lading by a preponderance of evidence showing lack of knowledge and assent.

The verdict shows that the jury found this factor in favor of the plaintiffs.

The principal grounds of appeal are directed to the refusal to charge as requested, and to the instruction as delivered.

The trial court, in dealing with these requests, and in its charge upon the subject-matter thereof, followed the rule laid down by this court in the case of *Hill* v. *Adams Express Co., 82 N. J. L.* 373, decided at the June term, 1911. The shipment in the case, like those involved in the present controversy, was an interstate one; and the question to be determined, therefore, is whether our earlier decision has been overruled by later federal decisions of paramount authority.

Prior to the passage by congress in 1906 of what is generally known as the Carmack amendment to the Interstate Commerce act, the liability of the carrier for loss or damage to interstate shipments was determined, in the state courts, either by the application of common law rules as declared by such courts, or of statutory provisions existing in particular states; the result being that, under exactly similar conditions, the existence and the extent of the liability depended very largely upon the forum in which it was attempted to be enforced by the shipper. The main purpose and effect of the Carmack amendment was to provide a uniform rule as to the liability of interstate carriers of goods, to relieve them from the diverse rules to which they had been theretofore subject; and to supersede all the regulations and policies of a particular state upon the subject. *Adams Express Co.* v. *Croninger,* 226 *U. S.* 491.

The question of the binding effect upon the shipper of provisions contained in a bill of lading delivered to him by the carrier, was one of the many upon which variant views were held and enforced in the different state courts. In some tribunals it was considered that a shipper who had accepted a bill of lading was conclusively presumed, in the absence of evidence of fraud, to have thereby assented to the terms of the instrument, and he was not permitted to deny that stipula-

tions therein were known and assented to by him.  In other jurisdictions it was considered that, although the acceptance of the bill of lading by the shipper raised a presumption that he knew of and assented to the provisions thereof, such presumption might be overcome, and the shipper relieved from the obligations imposed upon him thereby, by proof of lack of knowledge thereof, and non-assent thereto, by him.  In still other jurisdictions it was held that the stipulations contained in the bill of lading were not binding on the shipper, unless the carrier proved his assent thereto by evidence other than the mere delivery thereof to and its acceptance by him.  The cases expressing these diverse views will be found collated in the foot notes to Mr. Justice McClain's article on *Carriers* in 6 *Cyc.* 406.

One of the dominating features of the Carmack amendment is its mandatory requirement that the initial carrier shall issue to the shipper a receipt, or bill of lading, for property received by it for transportation from one state to another.  Such receipt or bill of lading is in form and in essence a contract, and, when issued, constitutes the agreement between the shipper and the carrier which regulates and defines their respective rights and liabilities, except as to stipulations contained therein which are repugnant to that amendment, or other federal law.  By force of that amendment the delivery to, and acceptance by, the shipper of such a bill of lading constitutes it a binding contract on his part, so far as the valid provisions thereof are concerned, even if he does not know of the stipulations contained therein, and has not by any act, except the mere acceptance of the bill, signified his assent to them.  *Boston and Maine Railroad Co.* v. *Hooker,* 233 *U. S.* 97.

And not only are the valid stipulations of the bill of lading binding upon the shipper to the initial carrier that issues it, but they also enure to the benefits of every connecting carrier along the route over which the goods are forwarded.  *Kansas Southern Railway Co.* v. *Carl,* 227 *U. S.* 639, 648.

The effect of these federal decisions which have been recited, each one of which is of later date than our own decision in

Hill *v.* Adams Express Co., is to nullify the rule therein laid down by us so far as interstate shipments are concerned. It follows, therefore, that it was error for the trial court to refuse to charge the requests submitted if the stipulations of the bills of lading referred to therein were valid and unobjectionable.

As to the stipulation, which was the subject of the first request, viz., the limitation of the time within which the shipper should make his claim against the carrier for loss or damage to the goods shipped occurring before delivery thereof to the consignee, its validity is established by the decision in *Southern Express Co.* v. *Caldwell,* 88 *U. S.* 264, where it is held that an agreement between the shipper and the carrier that the latter should not be liable for failure to deliver the goods received by it for transportation unless a claim shall be made by the shipper within a specified period, if that period be a reasonable one, is not against the policy of the law and is valid; and by the later decision, in *Missouri, Kansas and Texas Railway Co.* v. *Harriman,* 227 *Id.* 657, where it is decided that a provision in a bill of lading, limiting the time within which suit may be brought for loss or damage to the property transported by the carrier, is not objectionable, provided the time limit be a reasonable one, and that "there is nothing in the policy of the Carmack amendment that is violated thereby." For it is not contended that the period of limitation in the present case is an unreasonable one.

The validity of a stipulation such as that embodied in the second request—that the liability for loss should be measured by the value of the goods at the time and place of shipment—has not been determined by the federal Supreme Court; at least our examination has not disclosed any decision bearing upon this point, nor have we been referred to any by counsel. It was, however, said, *obiter,* in *Phoenix Insurance Co.* v. *Erie, &c., Transportation Co.,* 117 *U. S.* 312 (at *p.* 322), that such a stipulation in a bill of lading would control in determining the measure of the carrier's liability; and a similar stipulation has been held valid in several state jurisdictions. *Tibbits* v. *Rock Island, &c., Railway Co.,* 49 *Ill. App.* 567;

*Rogan* v. *Wabash Railway Co.,* 51 *Mo. App.* 665; *Davis* v. *N. Y., O., &c., Railway Co.,* 70 *Minn.* 37. We can perceive no reason for considering it opposed to "the policy of the Carmack amendment,"" and therefore hold it binding upon the plaintiff.

The judgment under review will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BOGERT, VREDENBURGH, HEPPENHEIMER, JJ.   11.