**UNITED STATES of America,
Petitioner-Appellee,**

v.

**AUTO DRIVEAWAY COMPANY, a Corporation, Respondent-Appellant.**

**No. 71–1237.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 31, 1972.

Decided July 25, 1972.

James C. Hardman, Hardman, Kerwin & Towle, Chicago, Ill., for respondent-appellant.

James R. Thompson, U. S. Atty., Chicago, Ill., Morton Hollander, Raymond D. Battocchi, Attys., L. Patrick Gray, III, Asst. Atty. Gen., William J. Bauer, U. S. Atty., Dept. of Justice, Washington, D. C., for petitioner-appellee; Bernard A. Gould, Robert S. Turkington, Walter J. Alprin, I. C. C., of counsel.

Before KNOCH, Senior Circuit Judge, and KILEY and STEVENS, Circuit Judges.

KILEY, Circuit Judge.

This is a mandamus action brought by the government under 49 U.S.C. § 20(9) [1] to restrain respondent-appellant (Company) from limiting in its tariff its liability for damages as a common carrier under 49 U.S.C. § 20(11).[2] The district court decided that both the original and modified tariffs violated § 20(11) and 49 U.S.C. § 316(d), but that because the Company informed the court that in the future it would not violate § 20(11) the court was "unwilling" to grant the mandamus writ.[3] The Company has appealed. We reverse.

The Company, a Pennsylvania corporation with its principal office in Chicago, Illinois, was authorized by the Interstate Commerce Commission to operate as a for-hire common carrier, of motor vehicles, which drives the shipper's (owner's) motor vehicle together with the owner's baggage, sporting equipment and personal effects from one place to another.[4] In its original tariff the Company limited its liability to a maximum of $1,000 [5] or the deductible portion of the vehicle owner's collision insurance (if covered) and disclaimed any liability for loss of damage to "baggage, sporting equipment and personal effects" of owners of the motor vehicles transported by it. Before this suit was filed the Company had been told by Commission employees that its tariff violated § 20(11).

After this suit was filed, on October 30, 1969, the Company filed a new tariff including a Released Rate Order approved by the Commission in which the Company terminated the practice of denying liability for loss of damage to baggage, sporting equipment and per-

---

1. The Interstate Commerce Act.

2. The Motor Carrier Act of 1935 is now Part II of the Interstate Commerce Act, 49 U.S.C. § 301 et seq. Section 20(11), which originally applied only to common carriers, was made applicable to motor carriers in 49 U.S.C. § 319.

3. We take the district court's decision as an effectual declaratory judgment and therefore appealable as a final order under 28 U.S.C. § 1291.

4. For example, the Company drives cars of owners who do not wish to drive to a Florida vacation but who want to use their cars in Florida.

5. The Company selected $1,000 as the limitation since that was the minimum cargo insurance requirement under 49 C.F.R. § 1043.2 (1968). The minimum is now $2,500 under 49 C.F.R. § 1043.2 (1972).

sonal effects of the owner.[6] In addition to terminating the practice of disclaiming liability for the personal contents in the owner's car, the Company, in reissuing its Shipping Order and Freight Bill on January 1, 1970, removed the provision limiting its liability for damages to the car to either $1,000 for cars without collision insurance or the deductible portion of the owner's collision insurance. In its place the Company now claims the benefit of the owner's insurance on the motor vehicle in case of damage or loss as long as that provision does not void the insurance policy and as long as the Company reimburses the owner for the premium.[7]

The Company having conceded the unlawfulness of the original tariff, the only question raised in this appeal is whether the modified tariff with the "benefit of insurance" provision limits the Company's liability in violation of § 20(11) and is an "undue preference" in violation of § 316(d).[8]

### I.

The government contends that the "benefit of insurance" tariff provision violates § 20(11) because the Company concedes the earlier $1,000 limitation is unlawful and because the result for the Company under the pertinent clause is identical to the earlier result and consequently is also unlawful. It argues that the total effect is an attempt to do indirectly what the Company could not lawfully do directly.

The Company, to sustain the provision, argues: that there is no limitation or avoidance of liability since the provision applies only after the Company assumes liability; that its customers are not required to obtain insurance for the Company's benefit; and that the Company reimburses the customer for the premium if the Company actually benefits from the insurance policy. It relies upon Phoenix Ins. Co. v. Erie & W. Transportation Co., 117 U.S. 312, 6 S.Ct. 750, 29 L.Ed. 873 (1886), and Hartford Fire Ins. Co. v. Payne, 199 Iowa 1008, 203 N.W. 4 (1925).

We do not agree with the government that the situations under the earlier and the instant provisions are identical. In the earlier provision there was an express *limitation of liability* in the case of an insured customer to the deductible amount in the policy, and in the case of the uninsured customer to $1,000. The result was to enable the Company to *"exempt"* itself from liability for "the full actual loss, damage or injury caused by it" in direct violation of § 20(11). The "benefit of insurance" clause, however, presupposes the Company's liability for the "full" loss in conformity with § 20(11), and does not "exempt" it from

---

6. In accordance with the approved Released Rate Order No. MC 757, the Company promulgated Clause 4 in its Shipping Order and Freight Bill on January 1, 1970:
   4. Unless a greater value is declared hereon, the owner hereby agrees and declares that the value of the baggage, personal effects and sporting equipment described herein is released to a value not exceeding $50.00 per shipment.
   The agreed or declared value of the property is hereby specifically stated by the owner to be not exceeding $...... per shipment. For all shipments where luggage and personal contents exceed $50.00 in value, there will be an additional charge. Driveaway cannot accept shipments wherein the personal contents exceed $250.00 in value.
   The lawfulness of this tariff was not challenged in the district court.

7. The pertinent clause of the Shipping Order and Freight Bill provides:
   Any carrier or party liable on account of loss or damage to any said property shall have the full benefit of any insurance that may be effective upon account of said property, so far as this shall not avoid the policies or contract of insurance; provided, that the carrier reimburse the claimant for the premium paid thereon.

8. This "undue preference" provision is in accord with the National Transportation Policy—added to the Interstate Commerce Act by amendment September 18, 1940, ". . . to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discrimination, undue preference or advantages or unfair or destructive competitive practices. . . . "

that liability. The clause permits the Company to recover from the customer the proceeds of the insurance paid him.

We see no violation of § 20(11) in the "benefit of insurance" clause. There is no express prohibition in § 20(11) which precludes the clause. The Supreme Court, before adoption in 1887 of the Interstate Commerce Act, decided that "As the carrier might lawfully himself obtain insurance against the loss of the goods . . . he may lawfully stipulate with the owner to be allowed the benefit of insurance voluntarily obtained by the latter." Phoenix Ins. Co., 117 U.S. at 325, 6 S.Ct. at 756. Presumably the Company's "benefit of insurance" clause will be known to the car owner and under the tariff provisions the clause must not contravene terms of any owner's insurance policy. Practically, the clause does not have significance, since most owners who would engage the Company's services would have insurance. And the insurer is, or can be, protected by a policy endorsement which would effectually conflict with the clause. We conclude that the clause does not "exempt . . . [the Company] . . . from the liability imposed" so as to violate § 20(11).

There is no requirement in the clause that all shippers carry insurance protecting the Company. The part of the premium—paid by the owner for his liability insurance—attributed to the custody of the car by the Company is minimal. In the event of a loss, that part is reimbursed by the Company to the owner, and the Company is burdened with the total loss. Accordingly, there is no limitation of liability in violation of § 20(11).

We conclude that the district court erred in deciding that the "benefit of insurance" clause in suit violated § 20(11).

## II.

We think also that the district court erred in deciding that the "benefit of insurance" clause is an unlawful preference.

49 U.S.C. § 316(d) states:

Undue preferences or prejudices prohibited

(d) All charges made for any service rendered or to be rendered by any common carrier by motor vehicle engaged in interstate or foreign commerce in the transportation of passengers or property as aforesaid or in connection therewith shall be just and reasonable, and every unjust and unreasonable charge for such service or any part thereof, is prohibited and declared to be unlawful. It shall be unlawful for any common carrier by motor vehicle engaged in interstate or foreign commerce to make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, gateway, locality, region, district, territory, or description of traffic, in any respect whatsoever; or to subject any particular person, port, gateway, locality, region, district, territory, or description of traffic to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever: *Provided, however,* That this subsection shall not be construed to apply to discriminations, prejudice, or disadvantage to the traffic of any other carrier of whatever description.

The government contends that the clause operates to give an unlawful preference to non-insured owners, since the Company's insured owners pay the cost of transportation *and* the premium for insurance if their car is not involved in an accident, while the non-insured pay only the transportation cost.[9]

9. The government concedes the clause would be lawful if insured customers were given—with approval of the Commission—a rate less than that charged non-insured customers. Such an adjusted rate, if lawful, which we do not decide, would seem to create more problems for the Commission and carriers than it would solve, in view of the variable coverages and costs of owner insurance and

We think the government's reliance on the Second Circuit's decision in China Fire Ins. Co. v. Davis, 50 F.2d 389, 392–393 (2nd Cir. 1931), cert. den. sub nom. Mellon v. China Fire Ins. Co., 284 U.S. 658, 52 S.Ct. 36, 76 L.Ed. 558 (1931), is misplaced. That decision, which found a violation of § 2 of the Act there, is not authority for a holding that § 316(d) of the Act is violated here. There the basic question was whether the plaintiff insurer had shown that the fraud of the shipper was attributed to the carrier where the shipper who had been paid total damages by the carrier for goods damaged in transit withheld that information while collecting the benefits of an insurance policy directly paid for by the shipper. The court found the "benefit of insurance" clause in the carrier's bill of lading invalid in that it allowed the shipper to obtain insurance on the goods in transit for which the carrier was primarily liable; and the carrier had no tariff obligation to reimburse the shipper.[10] Under these facts the China Fire court could reasonably hold that the insurance added cost to the shipper for the transportation of the goods so as to result in the carrier charging or receiving "greater compensation" from insured shippers than it charged or received from uninsured shippers.

In National Garment Co. v. New York C. & St. L. R. Co., 173 F.2d 32, 37–38 (8th Cir. 1949), another case relied on by the government, the Eighth Circuit held that the "benefit of insurance" clause there violated § 2 of the Act. The court followed China Fire in construing § 2 of the Act in a case somewhat similar, on the facts, to China Fire. The Eighth Circuit decided that the lack of the reimbursement provision in the carrier's tariff in China Fire was of no aid to the "benefit of insurance" clause in National Garment and did not change the China Fire rule. The court thought the insurance was of value to

the carrier during the period of transportation and that in the usual event of transportation without loss the carrier had received the "compensation" forbidden by § 2 at the expense of the shipper. The court further stated: "In the event of loss the carrier, if it so elects, returns to the shipper the cost of the compensation [the premium] which it was forbidden by the Act to receive in the first place, avoids its liability as a carrier, and deprives the insurer of its rights under a valid contract." National Garment, 173 F.2d at 38.

Neither China Fire nor National Garment is applicable to the case before us. Here we are not dealing with a specific agreement to transport an owner's motor vehicle, nor a specific insurance policy. Section 2 prohibits "greater compensation" to the carrier while § 316(d) prohibits "unjust and unreasonable charges" and "undue and unreasonable preferences." We understand from this record that, unlike National Garment and China Fire, the owner here purchases insurance primarily to cover his use of the motor vehicle and not the shipping of the vehicle. The issue actually is whether the premium paid by an insured owner—whose vehicle is not damaged—for the time the motor vehicle is in the custody of the carrier amounts to an unreasonable preference or an unreasonable charge as opposed to the uninsured owner.

The government contends that the Company receives the benefit of insurance coverage although the shipped motor vehicle is not damaged, and that the owner's payment of the premium amounts to an additional charge on him above the actual charge of transporting the car which all owners pay whether or not they have insurance. This they argue is an unreasonable charge and suggest that the problem could be cured if the Commission approved lesser rates for insured owners than for uninsured owners. As pointed out earlier in fn. 9,

the necessity of adjusting rates accordingly, e. g., age and quality of drivers, type of car, residence of owner, extent of coverage.

10. See National Garment Co. v. N.Y.C. & St. L. R. Co., 173 F.2d 32, 38 (8th Cir. 1949).

this type of rate setting might present additional problems. There has been no showing in this record that the "benefit of insurance" clause in the Company's bill of lading provides for an "unjust and unreasonable charge" or "undue and unreasonable preference" in which owners with insurance are charged more than owners without insurance.

There is no preference granted uninsured motorists in the wording of the clause. No insurance is required of any owners, even if we assume that uninsured motorists are substantial users of the Company's services. The clause presupposes, unlike the shipper's insurance in *China Fire*, the customary owner's liability insurance, which the owners would carry even if the Company's services were not used. We hold that this record does not support the district court's finding that the "benefit of insurance" clause in the Company's tariff violates § 316(d), since there has been no showing that that part of the insurance premium attributable to the Company's custody of the owner's car amounts to an unreasonable preference or charge.

Reversed.