TRAVELERS INDEMNITY COMPANY, Plaintiff-Respondent,
v. AUTO DRIVEAWAY COMPANY, Defendant-Appellant.†

Court of Appeals

*No. 78–039. Argued January 17, 1979.—Decided March 12, 1979.*
(Also reported in 278 N.W.2d 262.)

† Petition to review denied.

For the defendant-appellant there was oral argument by *Richard S. Marcus,* of *Godfrey & Kahn,* Milwaukee, with whom on the brief was *John V. Kitzke* and *Nelson D. Flynn.*

For the plaintiff-respondent there were briefs and oral argument by *Brian J. Henderson* of *Riordan, Crivello, Sullivan and Carlson,* of Milwaukee.

Before Decker, C.J., Cannon, J., and Robert W. Hansen, Reserve Judge.

HANSEN, J.   The facts in this case are not in dispute.  Appellant, Auto Driveaway Company, is a Pennsylvania corporation whose business is obtaining drivers to transport automobiles from place to place.  Respondent, Travelers Indemnity Company, is an insurance company incorporated in Connecticut.  Driveaway entered into a contract with Elmore Kraemer, the insured of Travelers, to transport Kraemer's auto from Palm Springs, Cali-

fornia, to West Bend, Wisconsin. En route, the car and the driver, hired by Driveaway, disappeared. Neither have been located since. Kraemer made claim against his insurer, Travelers, for the loss of his auto, and Travelers paid the claim. Travelers then made claim against Driveaway. After the claim was denied, Travelers commenced this action against Driveaway for its loss under the Kraemer policy.

The trial court rendered judgment in favor of Travelers, finding Driveaway strictly liable as a common carrier pursuant to 49 U.S.C. §20(11), and further finding Travelers subrogated to the rights which Kraemer had against Driveaway for the nondelivery of the Kraemer car to West Bend. Additionally, the trial court held that the "No Benefit to Bailee" provision in the insurance policy issued by Travelers to Kraemer was in conflict with the "Benefit of Insurance" provision in the shipping contract (bill of lading), with the result that Driveaway was not entitled to the "Benefit of Insurance" provision in Kraemer's policy of insurance with Travelers.

The two pertinent provisions in the automobile insurance policy issued by Travelers to Kraemer are these:

23. NO BENEFIT TO BAILEE (Part V.) The insurance afforded by this policy shall not inure directly or indirectly to the benefit of any carrier or other bailee for hire liable for loss to the automobile.

. . . .

30. SUBROGATION. In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor . . . . The insured . . . shall execute and deliver instruments and papers, do whatever else is necessary to secure such rights and shall do nothing after loss to prejudice such rights.

The pertinent provision, the "Benefit of Insurance" clause, in the contract between Driveaway and Kraemer reads as follows:

Should Driveaway be liable on account of loss or damage to any of said property, it shall have the full benefit of any insurance that may have been effected upon or on account of said property, so far as this shall not avoid the policies or contracts of insurance. Provided, that Driveaway reimburses the claimant for the premium paid thereon.

The crunch between the two provisions in the car owner's insurance policy and the clause in the drive-for-hire contract with the common carrier is obvious. While the issue of liability as here presented between insurer and for-hire carrier has not been decided in this state, it has come to court in other jurisdictions. Actually, the wording in the two contracts, one for insurance protection and the other for transportation of the owner's auto, is the latest chapter in a long and continuing conflict between insurance carriers and common carriers as to who is to bear the burden of ultimate loss in a situation such as the one here presented. *See* Note, *Subrogation of an Insurer: The Burden of the Loss of Insured Goods in Transit*, 37 HARV. L. REV. 901 (1924).

Discussion of these skirmishes in draftsmanship can begin with the decision of the United States Supreme Court, holding that a common carrier has an insurable interest in a shipment and may enter into a valid contract with a shipper/owner which gives the carrier the benefit of any insurance which the shipper/owner procured or may procure on the shipment. *Phoenix Ins. Co. v. Erie & Western Trans. Co.*, 117 U.S. 312 (1886). Way back then, and since, insurance companies responded to the *Phoenix* decision by adding a clause to their policies which voids the policy of insurance if their insured enters into a contract which gives the carrier-for-hire the benefit of the insurance policy issued to the shipper/owner. Such added clause sets up the conflict, not with

the *Phoenix* holding, but with the usual provision in the common carrier's contract or bill of lading giving the carrier-for-hire the full benefit of any insurance on the property shipped but only "so far as this shall not avoid the policies or contracts of insurance."

Given such conflict or crunch between the provisions of an insurance policy and a carrier-for-hire contract, with no controlling decision found in this state, we go to decisions in other jurisdictions, seeking not authority to follow but logic and reasoning that is persuasive. We find, as did the trial court, the superior logic and more persuasive rationale in those opinions that conclude a carrier-for-hire is entitled to the benefit of a shipper/owner's insurance where its contract or bill of lading with such shipper/owner gives the carrier-for-hire the benefit of insurance upon the goods to be delivered but only "so far as this shall not avoid the policies or contracts of insurance."

One such decision, an early enough case in the neighboring state of Iowa, had the state's highest tribunal holding:

When [the insurer] contracts, therefore, that its undertaking shall be void if the insurer does anything to deprive it of the right, upon paying the loss, to be subrogated to the rights of the shipper and to recover against one whose act or omission caused the loss, a contract between the shipper and carrier that gives the latter the benefit of the insurance voids the contract of insurance for the shipper, and is ineffectual to secure the benefit of insurance to the carrier; that is to say, the carrier can have no benefit of insurance when there is no valid insurance, and there is no valid insurance when the assured has done a thing which he has expressly stipulated would invalidate it. *Hartford Fire Ins. Co. v. Payne,* 203 N.W. 4, 6 (Iowa 1925).

The Iowa court held the insurance policy valid as between the insured and the insurer, concluding that the insurer had not waived its subrogation rights by voluntarily paying its insured's claim. *Id.* at 7. This nonwaiver by payment to insured rule has been adopted elsewhere. *Centennial Insurance Co. v. Haley Transfer & Storage, Inc.,* 18 N.C. App. 152, 196 S.E. 822, 827 (1973).

As to nonwaiver by payment to the insured, these holdings square well with decisions in this state making clear that subrogation is an equitable doctrine to be available when a party other than a mere volunteer pays a debt or demand which should have been paid by another. As such equitable doctrine, subrogation is intended to avoid an unjust enrichment. *Northwestern N.C. Co. v. State A. & C. Under.,* 35 Wis.2d 237, 242, 151 N.W.2d 104, 106 (1967). *See also Perkins v. Worzala,* 31 Wis.2d 634, 637, 143 N.W.2d 516, 518 (1966). Defining the concept of subrogation, our state supreme court has said: "The insurer is entitled to all the remedies and securities of the assured and to stand in his place. The right of subrogation is not limited to cases where the liability of the third person is founded in tort." [Footnote omitted.] *New Amsterdam Casualty Co. v. Acorn Products Co.,* 42 Wis.2d 127, 134, 166 N.W.2d 198, 201 (1969). As to the effect upon its rights as a subrogee of a payment by an insurer to a claim made against it by its insured, we see the conclusion reached by the Iowa court in *Payne* to be entirely consistent with Wisconsin cases spelling out the purpose sought to be served by the equitable doctrine of subrogation.

On the broader front of resolving the conflict between insurance policy provisions and carrier bill of lading provisions, in accord with the *Payne* holding in Iowa, is the holding of the state supreme court in New Hampshire. *Richard D. Brew & Co. v. Auclair Transportation, Inc.,*

106 N.H. 370, 211 A.2d 897 (1965). There the New England court held that where the bill of lading provided for benefit of insurance to inure to the carrier and the insurance policy contained a clause providing that the bailee is not to receive directly or indirectly the benefit of insurance, the bill of lading does not relieve the carrier of liability for damage. In that case the New Hampshire court also held that the carrier's liability is not to be limited to the payment of the insurance premium, and that the insurer was subrogated to the shipper's cause of action against the carrier for damages sustained. In this case, the court quoted with approval the interpretation urged by a writer in a leading law review, to wit,

The apparent circularity of expression may be resolved by interpreting the provision in the bill of lading as entitling the carrier to the insurance if there is no opposing *stipulation* in the policy or contract of insurance, that is, no warranty or provision for avoidance; and not, if there is. Consequently, the insured may recover from the insurer; the insurer is effectively subrogated to his cause of action against the carrier; and the carrier is not entitled to the insurance. [Emphasis in original.] *Id.* at 899, quoting Campbell, *Non-Consensual Suretyship,* 47 YALE L.J. 69, 85 (1935).

We agree with this reasoning and this result. That means we agree with the trial court in this case that the insured (Kraemer) could recover from his insurer (Travelers) ; that the insurer (Travelers) is effectively subrogated to its insured's (Kraemer's) cause of action against the carrier-for-hire (Driveaway), and that the carrier (Driveaway) was not here either entitled to the insurance or to defeat the claim against it by the insurer (Travelers) as subrogee.

While Driveaway is thus held strictly liable for the missing automobile, that is a consequence, not a cause,

of the interpretations given the pertinent provisions in the Travelers insurance policy and the pertinent provision in the Driveaway contract or bill of lading with Kraemer. It is with the exact language in the two contracts that we, as did the trial court, have dealt. We do not suggest that any "Benefit of Insurance" clause in a common carrier's bill of lading conflicts with the strict liability imposed on carriers for hire by 49 U.S.C. §20 (11). A recent decision of the Federal Court of Appeals for the Seventh Circuit has held that it need not. *United States v. Auto Driveaway Company*, 464 F.2d 1380 (7th Cir. 1972). However, in that decision, the federal appeals court made clear that:

Presumably the Company's "benefit of insurance" clause will be known to the car owner and under the tariff provisions the clause *must not contravene the terms of any owner's insurance policy.* . . . And the insurer is, or can be, protected by a policy endorsement which would effectually conflict with the clause. [Emphasis supplied.] *Id.* at 1383.

Given the wording before us in both insurance policy and bill of lading, we find, as did the trial court, that the pertinent provisions of the insurance contract did contravene and do effectually conflict with the "benefit of insurance" clause in the bill of lading. The result is that the insurer's rights to subrogation under the insurance contract are not here defeated by the "benefit of insurance" clause in the bill of lading, as heretofore interpreted and applied. So the trial court held, and we agree.

*By the Court.*—Judgment affirmed.