## NILES–BEMENT–POND CO. v. DAMPKIESAKTIESELSKABET BALTO et al.

### (Circuit Court of Appeals, Second Circuit. May 8, 1922.)

#### No. 306.

1. **Shipping ⬤➡115—Stowage of bulky packages, so they could not be found at first port of call, held negligence.**

   Where bulky packages, one of which was 20 feet long and weighed 10 tons, were stowed away in such manner that they could not be found at the first port of call, the carrier was negligent.

2. **Shipping ⬤➡140—Value of goods lost recoverable, where not discharged at port of destination, notwithstanding provision of bill of lading limiting liability.**

   Where vessel failed to discharge goods at port of destination because the packages had been stowed so that they could not be found, and the ship, after leaving such port, was sunk by a submarine, the carrier was liable for damage sustained, notwithstanding provisions of bill of lading limiting the damage to a specified amount per package, and making it permissible for the carrier, on failure to find goods at port of destination, to subsequently transship the goods; the failure to deliver the goods at the port named constituting a deviation, vitiating the provision of bill of lading limiting the liability.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by the Niles-Bement-Pond Company against the Dampkiesaktieselskabet Balto, in which the Ocean Transportation Corporation was impleaded under the fifty-sixth rule in admiralty. From a decree giving it insufficient relief, libelant appeals. Modified.

Bigham, Englar & Jones, of New York City (Oscar R. Houston and William H. Woolley, both of New York City, of counsel), for appellant.

Hunt, Hill & Betts, of New York City (John W. Crandall, of New York City, of counsel), for appellees.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The appellant made two shipments of machinery on the steamship Balto, owned by the appellee Dampskiesaktieselskabet Balto. Two bills of lading were issued, signed by the Ocean Transportation Corporation and acknowledging the receipt of the goods in New York for carriage to Bilbao on the north coast of Spain. One bill of lading covered an extra heavy car wheel lathe, packed in seven cases and three separate pieces, weighing in all 67,720 lbs., and the other covered a model 100-foot boring and turning mill, packed in five cases and six separate pieces, weighing in all 57,030 lbs. Bilbao was the first port of call after the vessel left New York. She duly reached her port, made delivery of part of the shipments, but failed to deliver six of the items shipped—three out of each shipment. The value of the contents of these packages, as alleged in the libel, was $12,540. Their receipt in New York is conceded, as is their nondelivery at Bilbao. At Bilbao, the Balto discharged her cargo for that port at the outer port, because her draft did not permit her entering the river. Discharge was made onto lighters. After the discharging had finished,

it was found from the notes and books of the stevedores that the six cases of metal-working machinery had not been unloaded. Thereupon the compartments of the Balto were searched, particularly hold No. 2, the one said to be best adapted for the carriage of heavy cargo, and after time spent in the search, and after shifting considerable, but not all, of the cargo, the six cases were not found. Owing to the heavy weather then prevailing, which caused a break of the Balto's lines at the commencement of the discharge, further attempts to find the six cases of machinery were abandoned. A few days after leaving Bilbao, bound for Cadiz, Spain, she was brought up by a German submarine and subsequently sunk. The balance of her cargo, including the six cases of metal-working machinery, was lost. The bills of lading contained the following clauses:

"Neither the carrier nor its property shall be liable * * * for any value exceeding $100 upon each of the packages covered by this bill of lading, unless bills of lading are signed therefor, in which their nature and value are expressed, and extra freight expressed and paid for the assumption of extraordinary risk."

They further provided:

"In case any part of the goods cannot be found for delivery during the steamer's stay at the port of destination, they are to be forwarded by the first opportunity when found, at the carrier's expense; the steamer not to be held liable for any claims for delay or otherwise."

"It is mutually agreed that the carrier shall have liberty to forward the goods by, or transfer to, any other steamer, to transship, * * * to deviate, to proceed to the port stated in this bill of lading via any port or place en route or beyond, in any order, whether in or out of the customary or advertised route, for any purpose whatever, and to discharge * * * at any port or place, * * * and to forward by any other conveyance to the port of destination."

The court below held that the vessel was negligent in the stowage and care of the packages and in the failure to deliver them at Bilbao. It was held that this constituted a deviation and rendered it liable for the loss. Following the decision of the District Court in De Vasconcellas v. The Sarnia (unreported), the court below limited the damage to $100 per package as stated in the bill of lading, and entered a decree for $600 in favor of the appellant. The claim now presented is that, since there was a deviation of the voyage, the limitation of liability contained in the foregoing clause of the bills of lading of $100 is inapplicable, and that damages should be decreed for the full value of the missing machinery. Since this decree was entered on December 14, 1921, this court reversed the De Vasconcellas Case (278 Fed. 459—certiorari to Supreme Court denied April, 1922, 258 U. S. ——, 42 Sup. Ct. 382, 66 L. Ed. ——), holding that the valuation agreed upon in the bill of lading limiting it to $100 falls, with other provisions of the bill of lading, where there is deviation. The appellant accordingly asks to modify the decree.

[1] The missing cases were bulky, one of them 20 feet long, weighing 10 tons. Such packages ought not to be mislaid and be incapable of finding at the first port of call. A stowage plan which failed to provide for the carrier's readily finding such packages and having them ready for unloading at the first port represents mismanagement and

constitutes negligence in the care of the packages. It appears from the evidence that the packages were not stowed together, but were scattered in different holds. The stowage plan did not show where the goods in question were stored, nor was the stowage plan produced at the trial. This court said in De Vasconcellas v. The Sarnia, supra:

"It seems to us most unreasonable to hold that, as between the shipper and the carrier, the former should be estopped by a valuation clause, where the latter's own misconduct has breached the agreement and destroyed the conditions upon which the estimate of value was predicated. * * * It has long been established law that a deviation changes the character of a voyage so essentially that the shipowner who has deviated cannot claim the benefit of the terms of the bill of lading. The unjustifiable deviation vitiates or avoids the contract of carriage"—citing Giband v. Great Eastern Ry. Co. [1921] 2 K. B. 426; Morrison v. Shaw [1916] 2 K. B. 783; Constable v. National S. S. Co., 154 U. S. 51, 14 Sup. Ct. 1062, 38 L. Ed. 903.

[2] The failure to deliver the goods at the port named in the bill of lading, and carrying them further to another port, is an over carriage, and constitutes a deviation, and is negligence for which the carrier is liable. Calderon v. Atlas S. S. Co., 170 U. S. 272, 18 Sup. Ct. 588, 42 L. Ed. 1033. In the Calderon Case, the bill of lading provided that, in case any part of the goods could not be found for delivery during the steamship's stay at the port of destination, they were to be forwarded at the first opportunity when found at the company's expense, and the steamer was not to be held liable for any claim for delay or otherwise. There the company failed to land goods at the port of destination, and brought them back and reshipped them. They were lost on the next voyage, due to a hurricane. The Supreme Court held:

"Not only was there negligence in failing to examine the ship's papers to ascertain what goods were consigned to Savanilla, but there was also negligence in stowing such goods under that portion of the cargo destined for Carthagena, and thus concealing them from observation."

And it was further said:

"We are clearly of the opinion that the provision of section one of the Harter Act supersede and override this stipulation in the bill of lading," and "as the negligence of the respondent in this connection is clearly proven, there can be no doubt of its liability under either of these sections of the Harter Act."

Accordingly the court held the vessel liable for the full value of the cargo, even though lost in a hurricane which, under another provision of the bill of lading, would have exempted the carrier from liability had there been no deviation. Since, under our decision in the Sarnia Case, supra, a failure to carry as required by the terms of the bill of lading or a deviation of the voyage gives the shipper the right to consider the goods as converted by the deviator, and the ship responsible for damages due to breach of the contract of carriage, without any reference to the question of whether the deviation had any bearing on the particular loss complained of, the carrier here must be held for the full damages flowing from the breach.

While it is true that under the foregoing terms of the bills of lading it was permissible for the appellee to transship the goods by rail or ship back to Bilbao, still this was not done, and the fact that the ship was later sunk does not relieve the appellee. Calderon v. Atlas S. S. Co.,

supra. The controlling authorities of the Calderon and Sarnia Cases require that the decrees below be modified, with directions to enter a decree for the full damages, and, if need be, a reference may be ordered to ascertain the amount.

Decree modified accordingly.

HOUGH, Circuit Judge, concurs, because the decision announced is the only one consistent with The Sarnia, 278 Fed. 459; but his own view of the matter is well expressed in the dissenting opinion of Mack, Circuit Judge.