## STANDARD MARINE INS. CO., Limited, v. SCOTTISH METROPOLITAN ASSUR. CO., Limited.

### No. 5352.

Circuit Court of Appeals, Sixth Circuit.

April 7, 1930.

Russell T. Mount, of New York City (Duncan & Mount, of New York City, and James M. McSweeney, of Cleveland, Ohio, on the brief), for appellant.

T. Catesby Jones, of New York City (Wm. L. Day, of Cleveland, Ohio, James W. Ryan and Bigham, Englar, Jones & Houston, all of New York City, and Day & Day, of Cleveland, Ohio, on the brief), for appellee.

Before DENISON and HICKENLOOPER, Circuit Judges, and TUTTLE, District Judge.

TUTTLE, District Judge.

This admiralty proceeding involves the rights of two marine insurers, appellant and appellee here, to share, by subrogation to the rights of their insured, in a certain fund recovered by the insured as damages for a part of a loss covered by insurance paid to the insured by said insurers.

Before any of the insurance in question had been effected, the insured had purchased 200,000 bushels of wheat, for future delivery at Montreal, Canada, at a C. I. F. invoice price of $1.38½ per bushel. This wheat was insured by the seller for the benefit of the purchaser as the insured, with the appellee insurer, at an agreed valuation of $1.42 per bushel. The policy included the following provision: "In case of any insurance upon the said goods subsequent in date to this Policy, the said Assurers shall nevertheless be answerable for the full extent of the sum by them insured, without right to claim contribu-

tion from such subsequent insurers, and shall accordingly be entitled to retain the premium by them received, in the same manner as if no such subsequent insurance had been made."

Thereafter, the insured obtained from the appellant insurer additional insurance upon this wheat on the following basis, and to the following extent, as provided in the policy of said insurer: "To cover 'Increased Value' on grain owned by the Assured or in which the Assured may have an interest, such 'Increased Value' for the purposes of this insurance, to be arrived at by taking the difference between the C. I. F. invoice cost and the highest market value per bushel, plus 5c (Five cents), as set out in the 'New York Journal of Commerce' between the day of sailing of the vessel at point of shipment, and the day of the final delivery of the complete cargo at destination as named in the Certificate, both days inclusive; and in the event of casualty, to be valued at the difference between the C. I. F. invoice cost and the highest market value per bushel, plus 5c (Five cents) as set out in the 'New York Journal of Commerce' between the day of sailing of the vessel at point of shipment, and the day the final delivery of the complete cargo would have arrived at destination if casualty had not occurred, both days inclusive." This policy contained the following provision: "Provided always, and it is hereby further agreed, that if the said insured shall have made any other insurance upon the property aforesaid, prior in date to this policy, then this Company shall be answerable only for so much as the amount of such prior insurance may be deficient towards fully covering the property hereby insured."

Shortly afterwards this wheat, thus insured, was shipped on the steamship Glenorchy, part from Fort William and part from Port Arthur, Ontario, destined for Montreal. Two days later said steamship was in collision with another vessel, resulting in the total loss of the cargo, including the said wheat. The first insurer, the appellee, immediately paid the insured the insurance due on its policy, at the agreed rate of $1.42 per bushel, aggregating $284,000. The second insurer, the appellant, promptly and voluntarily paid the insured insurance on the basis of the difference between the C. I. F. invoice cost, $1.38½ per bushel, and the highest market value (apparently at Montreal) during the time (apparently ten days) which it was estimated would have been consumed by this voyage if it had not been terminated by the said collision, $1.64¾ per bushel, plus the agreed five cents per bushel, or $1.69¾, mak-

ing the total amount of insurance so paid by the said insurer $62,500.

Subsequently, in the present limitation of liability proceedings in the court below, instituted by one of the vessels causing the collision, both vessels were held at fault and the insured recovered damages for the loss of this wheat, based on its actual value at the time and place of shipment thereof, $1.54¾, aggregating $309,500, with interest thereon. Both insurers, by intervening petitions in said proceedings, sought to recover, by subrogation to the rights of the insured against the offending vessels, a share in the said fund. The district court held that appellee, the first insurer, was entitled to be reimbursed, out of this fund, for the entire amount which it had paid to the insured for the loss of said wheat at the agreed value, $1.42 per bushel, under its policy already mentioned, and that the second insurer was entitled only to the balance remaining in said fund after the payment of the court costs and the amount thus awarded to the first insurer. To review this ruling of the district court the second insurer has brought the case by appeal to this court, claiming that it is entitled, by right of subrogation, to share pro rata with the other insurer in the fund recovered by the insured.

We think it clear that the district court did not err in its disposition of the question here involved. It is settled law that although an insurer, who has paid to its insured insurance on a loss, is entitled to be subrogated to whatever rights such insured has against a wrongdoer responsible for such loss, yet such right of the insurer is derived from, and is limited to, the rights which the insured has, as against such wrongdoer, with respect to the recovery of such damages for such loss. Phoenix Insurance Co. v. Erie & Western Transportation Co., 117 U. S. 312, 6 S. Ct. 750, 29 L. Ed. 873. The only rights, therefore, which either of these insurers has, under the principle of subrogation invoked by them, against the vessels causing the loss of this wheat or against the fund recovered by the insured from such vessels, are the rights which the insured itself had and on which such recovery was based. The sum of the rights of the insured in that connection is the measure and limit of the rights of these insurers, by subrogation, in this fund.

As, therefore, the amount of damages recoverable (The Vaughan and Telegraph, 14 Wall. 258, 20 L. Ed. 807) and recovered by the insured against the offending vessels was based upon the actual value of this wheat at the time and place of shipment, that is,

$1.54¾ per bushel, that sum represents the maximum amount in which the insurers are entitled to share by subrogation. As, then, the appellee paid the insured $1.42 per bushel and the appellant paid the insured the difference between the C. I. F. invoice cost, $1.38½ per bushel, and the value so recovered as damages by the insured, $1.54¾ per bushel, and neither insurer can claim by subrogation any amount in excess of the last-mentioned sum, the fund in question is sufficient to pay each insurer the full amount to which it is entitled from such fund except as to the difference between said invoice cost, $1.38½, and $1.42, the agreed value paid by the appellee, or 3½ cents per bushel, which sum was paid to the insured by both of the insurers. As, however, under the provisions of the policies already quoted, the appellant was specifically exonerated from liability for the amount of its insurance which was also covered by this prior insurance, while the appellee was expressly required to pay the entire amount of its insurance without regard to insurance by subsequent insurers and "without right to demand contribution from such subsequent insurers," the appellant, in paying to the insured this 3½ cents per bushel, which only the appellee was bound to pay, acted as a mere volunteer and is not entitled, at least as against the appellee, to now recover any part of such payment from this fund. Aetna Life Insurance Co. v. Middleport, 124 U. S. 534, 8 S. Ct. 625, 31 L. Ed. 537.

We see no merit in the complaint of the appellant that the court erred in directing that the fee of the special commissioner who made a report to said court on the questions here involved should be paid from the fund before payment to the appellant of its share therein.

We agree with the district court that, under the principles of subrogation as applied to the circumstances of this case, the appellee is entitled to be paid from the fund in controversy the full amount which it paid to the insured and that, after payment of said amount and of the commissioner's fee already mentioned from such fund, the appellant is entitled only to the balance thereof. Whether this disposition of the fund is based upon a right of priority, in the strict sense of the term, of the appellee, or whether it merely happens to result from the fortuitous circumstances already mentioned, is a question which we have no occasion to decide. It is clear that appellee is interested in this fund to the extent of $1.42 per bushel, and that appellant is interested therein (by subrogation to the rights of the insured) only to the extent of the difference between $1.42 and $1.54¾. The practical result is that to the extent just indicated each insurer recovers from the fund the full amount to which it is entitled under the doctrine of subrogation, while as to the 3½ cents below $1.42 and as to the 15 cents above $1.54¾ (the portions of its insurance not recoverable through subrogation) the appellant has no interest in said fund.

The judgment is affirmed with costs.