## GENERAL ELECTRIC CO. v. ARGONAUT S. S. LINE, Inc.

### No. 13640.

District Court, E. D. New York.

July 10, 1934.

Bigham, Englar, Jones & Houston, of New York City (F. Herbert Prem, of New York City, of counsel), for libelant.

Kirlin, Campbell Hickox, Keating & McGrann, of New York City (L. deGrove Potter and William H. Postner, both of New York City, of counsel), for respondent.

GALSTON, District Judge.

This matter comes before the court on exceptions to the amended libel.

The libel sets forth that on or about May 2, 1931, a shipment of electrical equipment was delivered to the authorized agent of the respondent at New York, to be carried by the respondent to Wilmington (Los Angeles Harbor), Cal., and there to be delivered to the libelant. The merchandise was placed on board the steamship Heffron at New York, and the vessel in due course arrived at the port of Wilmington, and there made delivery of only a part of the shipment.

Through the oversight and negligence of the ship's officers during the usual stay of the vessel at the port of Wilmington, some of the equipment, consisting of connectors, bases, cord sets, lamp holders, switches, bodies, fuses, and other miscellaneous equipment, were not found; and the Heffron left Wilmington having those goods on board. The goods were subsequently discharged at the port of San Francisco.

The respondent did not notify the shipper that the goods had not been delivered at Wilmington nor that they had been carried beyond Wilmington; and, without the knowledge of the libelant, the respondent reshipped the goods at San Francisco on board the steamship Harvard bound for Los Angeles Harbor. This vessel, with the goods on board, stranded en route to Los Angeles resulting in a total loss of both vessel and cargo.

Exception 2 sets forth that the libelant has failed to allege compliance with paragraph 15 of the bills of lading. Paragraph 15 is the usual clause providing for notice on loss of shipment: "15. The shipowner shall not be liable for any claims whatsoever unless written notice thereof shall be given to the shipowner before the removal of the goods from the wharf, even though such removal be by the customs authorities, or within ten days after the vessel shall have finished discharging, if the goods shall not have been removed sooner. Suit to recover for loss and/or damage shall not in any event be maintainable against the shipowner unless instituted within four months after the giving of written notice as above provided. No agent or em-

ployer shall have authority to waive any of the provisions or requirements of this bill of lading."

The respondent relies on Bank of California v. International Mercantile Marine Co. (C. C. A.) 64 F.(2d) 97, 100. In that case it appeared that goods had been shipped from Seattle to Hamburg, Germany, on an export bill of lading to the order of the shipper. On arrival at Hamburg, as a result of an order of the shipper's agent, the goods were misdelivered; and it was held that in such circumstances the shipper was not relieved from the burden of proving compliance with the notice clause. Referring in the opinion to The Sarnia (C. C. A.) 278 F. 459, in which case the bill of lading called for a shipment under deck and the goods were carried on deck and were damaged by reason of their exposed position, Judge Manton wrote: "We held that this breach of contract deprived the carrier of the valuation clauses in the bill of lading. We do not think the rule of the Sarnia Case should be extended to a case of misdelivery by an agent."

The libelant relies on Niles-Bement-Pond Co. v. Dampkiesaktieselskabet Balto (C. C. A.) 282 F. 235, 236. The facts in that case are not unlike those set forth in the libel herein. Two shipments of machinery went forward on the steamship Balto and were received in New York for carriage to Bilbao on the north coast of Spain. The vessel reached her port, made delivery of part of the shipment, but failed to deliver six of the items shipped. A search while in that port failed to reveal the six cases, and the search was abandoned. A few days after leaving Bilbao, bound for Cadiz, Spain, the vessel was brought up by a German submarine and was sunk, and the cargo of course lost.

The shipper sought to recover the value of the six cases of machinery that had not been unloaded at Bilbao. However, the bill of lading contained the following clause: " 'Neither the carrier nor its property shall be liable * * * for any value exceeding $100 upon each of the packages covered by this bill of lading, unless bills of lading are signed therefor, in which their nature and value are expressed, and extra freight expressed and paid for the assumption of extraordinary risk.' "

It was held that the failure to deliver the goods to the port named in the bill of lading and carrying them further to another port was overcarriage, constituted a deviation, and was negligence for which the carrier was liable. The opinion held: "Since, under our decision in the Sarnia Case, supra, a failure to carry as required by the terms of the bill of lading or a deviation of the voyage gives the shipper the right to consider the goods as converted by the deviator, and the ship responsible for damages due to breach of the contract of carriage, without any reference to the question of whether the deviation had any bearing on the particular loss complained of, the carrier here must be held for the full damages flowing from the breach."

It is argued by the respondent's counsel that the bill of lading in the present libel has a transshipment clause reading: "7. If any goods shall not be found during usual stay of the vessel at the port of destination or transshipment, they shall be sent back at the shipowner's expense but at the risk of the goods, and the shipowner shall not be liable for consequences of incorrect delivery unless the packages shall have been distinctly and permanently marked by the shipper before shipment with the name of the discharging port"—and accordingly that the respondent was at liberty to transship by any other vessel at any port without risk.

But a similar transshipment clause was considered in Niles-Bement-Pond Co. v. Dampkiesaktieselskabet Balto, cited, as indeed it was in Calderon v. Atlas Steamship Co., 170 U. S. 272, 18 S. Ct. 588, 590, 42 L. Ed. 1033. In this case, it was held that under the first section of the Harter Act (46 USCA § 190) the carrier should not be relieved from liability for loss or damage arising from negligence in the proper delivery of the goods, and that in the second section of that act (46 USCA § 191) provision is made that the carrier shall not insert any covenant or agreement in the bill of lading whereby the obligations of the carrier in respect to delivery shall be "lessened, weakened, or avoided."

The facts in the Calderon v. Atlas Steamship Co. Case are essentially the same as those presented in the present libel: "As the negligence of the respondent in this connection was clearly proven, there can be no doubt of its liability under either of these sections of the Harter act."

With the foregoing view of the law as applicable to the facts of the case, the exceptions are overruled. Settle order on notice.