**SHACKMAN et al. v. CUNARD WHITE STAR, Limited.**

District Court, S. D. New York.
Feb. 14, 1940.

Hill, Rivkins & Middleton, of New York City (Gregory S. Rivkins and Barton P. Ferris, both of New York City, of counsel), for libelants.

Lord, Day & Lord, of New York City (George deForest Lord and Henry C. Blackiston, Jr., both of New York City, of counsel), for respondent.

CONGER, District Judge.

This is an action for non-delivery by the respondent of two cases of raw fur skins. The libel states that three cases of raw fur skins were delivered to the respondent as common carrier by water for hire by the Majestic Shipping and Forwarding Co., Inc. (as agent), consigned to Southampton, England, to be subsequently delivered to John Shackman (owner) in London.

That thereafter one case was duly delivered in Southampton, but two cases were never discharged from respondent's vessel at Southampton and have never been delivered by the respondent to the consignee.

That as a result thereof, the libelant has sustained damages in the sum of $18,707.10.

The facts, which are not disputed, are briefly as follows:

On or about Saturday, December 5, 1936, John Shackman of London, England, purchased from Herzig & Hart, fur dealers, in New York City, a quantity of raw fur skins. The purchase price was $22,528.09. The furs were packed in three cases by employees of the furrier. They were counted and checked. All of the furs so purchased by Mr. Shackman were put in the cases, which were metal strapped and sealed with metal seals. On Monday, December 7, 1936, they were delivered to a truckman for delivery to the dock. The Majestic Shipping and Forwarding Co., Inc., was hired to take care of the shipment. The Victory Corporation was employed to take the three cases to the Cunard Pier, in New York City, which it did sometime during the afternoon of the 7th. The three cases were delivered to the respondent in good order and condition. On the same day they were stored by the respondent on its pier in New York City. On the next day they were loaded on board the Berengaria (respondent's vessel) for shipment to England. The cases were marked J.S. 14—18/19. The shipment was consigned as alleged in the libel and as heretofore referred to.

A bill of lading was issued by the respondent, dated December 9, 1936, showing a shipment of "Three cases of Raw Fur Skins". Case numbered 14 was duly delivered at Southampton, England, but cases numbered 18 and 19 were never discharged from the vessel at Southampton, and have never been delivered to the owner, or to anyone else as far as the record shows.

Respondent admits the non-delivery and has no explanation for the loss. It contends that it is not liable, in any event, in excess of $500 per package, or a total of $1,000, by reason of the provisions of the American Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq.

There is no question of liability here. Respondent admits receipt of the goods and the failure to deliver two of the cases. It offers no excuse for the non-delivery. The libelant is entitled to damages for the short delivery; libelant claims the value of the furs ($18,707.10, with interest); and the respondent contends that libelants' recovery should be limited to $500 per package, or $1,000 in all.

Respondent relies on the provisions of the Carriage of Goods by Sea Act (Sect. 4, Para. 5, passed by Congress, 46 U.S.C.A. § 1304(5), approved April 16, 1936, effective July 16, 1936).

The particular portion there relied on is as follows: "(5) Valuation of Cargo. Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading." This section of the Act is made part of the instant Bill of Lading by reason of a clause paramount printed legible on its face as follows: "This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, Approved April 16, 1936, which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or lia-

bilities under said Act. If any term of this bill of lading be repugnant to said Act to any extent, such term shall be void to that extent, but no further." Were this clause absent from the bill of lading, the above paragraph of the Carriage of Goods by Sea Act would still be a part of the bill of lading. The Act, itself, provides: "That every bill of lading * * * which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this Act [chapter]." 46 U.S.C.A. § 1300.

In the instant case the nature and value of the goods were not declared by the shipper, before shipment and inserted in the bill of lading. There is no dispute about this. Therefore, under normal and ordinary circumstances, there can be no doubt but that Section 4, paragraph 5, of the Act would govern and the libelant would be limited to recovery not to exceed $500 per package.

Libelant claims that whatever rights and immunities respondent had under the Carriage of Goods by Sea Act, it could surrender and that it could increase its responsibility and liability thereunder.

In the bill of lading there is this clause: "Also, that in the event of claims for short delivery when the vessel reaches her destination, the price shall be the market price at the port of destination, on the day of the vessel's entry at the Custom House, less all charges saved." There was short delivery, and libelant therefore argues that by this clause of the bill of lading, respondent has elected to enlarge its liability and surrender its rights and immunities which it had under Section 4, paragraph 5 of the Act.

This is the main question to be decided. No case based on similar facts and decided since the passage of the Carriage of Goods by Sea Act, has been called to my attention; neither have I been able to find any. But I do think that the case of Stevens v. Cunard Steamship Company, Limited., D. C., 265 F. 871, 872, decided in this District (May 3, 1920), and affirmed, 2 Cir., 271 F. 306, decides the issue. The facts are practically similar and the short delivery clause in each bill of lading is the same. In the Stevens case, the bill of lading also contained the following clause: "It is also mutually agreed that the value of each package shipped hereunder does not exceed £ 20 (or its equivalent in American currency), or relatively for any proportion thereof, on which basis the freight is adjusted, and the company's liability shall in no case exceed that sum unless a value in excess thereof is specially declared on a shipping note accompanying the goods and stated therein and extra freight as may be agreed upon paid." In that case (Stevens) libelant contended that this clause and the short delivery clause should be read separately and independently of the last above quoted clause, and that under the short delivery clause libelant was entitled to recover the market value at the place of destination, which was more than £ 20, while respondent claimed that pursuant to the above clause its maximum liability could not exceed £ 20.

The precise question is presented here. The fact that the Stevens case was based entirely on contract, it seems to me, does not matter. In the instant case the limitation clause is statutory, but just as much a part of the bill of lading as though physically in it, and just as much a part thereof as though placed therein by agreement of the parties. In each case either party might enlarge its responsibility or waive any immunities it might have. In each case the contention was that by the inclusion of the so-called short delivery clause in the bill of lading, respondent had enlarged its responsibility. In the Stevens case, it was held that it did not: " * * * Clearly the short delivery clause cannot be held to enlarge liability. It is a matter of common knowledge that short deliveries often occur where the freight concerned is of a value less than £ 20, and the point of the clause is that, in such instances, the measure of damage shall be market value— a reasonable agreement. I can see no other construction, if the elementary rule be applied that a clause in a contract must be construed in the light of the context, and so as to make sense and be harmonious with the context. The Koan Maru (D.C.) 251 F. 384, 387; Kroll v. Oriental Navigation Corporation (Sup.) 178 N.Y.S. 250."

In the case at bar I am of the opinion, by the inclusion of the short delivery clause in the bill of lading, respondent did not surrender any of its rights or increase any of its responsibilities. As I read the provisions of the bill of lading in connection with Section 4, paragraph 5, of the Carriage of Goods by Sea Act, the carrier is only liable under the circumstances of this case to a maximum of $500

per package. This may seem like a harsh rule, but any other construction would be a strained and artificial one, and one not contemplated by the contract between the parties. The remedy was, at all times, with the shipper. He could have declared the nature and value of the goods before shipment, and inserted them in the bill of lading. Having failed to do so he comes squarely under the limitation above set forth. As bearing on this question of surrender of rights and increase of responsibility, the so-called clause paramount should be considered. If it has any meaning, if it has any value, if it is to be considered at all, one must come to the inevitable conclusion that the respondent never intended to surrender any of its rights under the Act, and, specifically, that it never intended to surrender any rights which it had under the limitation section, and never intended to enlarge its responsibility thereunder.

█ Libelant further contends that by reason of the unexplained failure to deliver the packages at Southampton, there is a presumption that they were over-carried and that as a result there was a deviation which deprived the respondent of the benefits of the clauses of the bill of lading and of the statutory limitation of liability.

I realize that a deviation may be accomplished by a number of different circumstances as was stated in The Indrapura, D.C. 171 F. 929, 931, in defining the term "deviation"; "It was originally employed, no doubt, for the purpose its lexicographical definition implies, namely, to express the wandering or straying of a vessel from the customary course of voyage; but it seems now to comprehend in general every conduct of a ship or other vehicle used in commerce tending to vary or increase the risk incident to a shipment."

The only facts to sustain the charge of deviation are that the goods were delivered to the Berengaria at New York for delivery to Southampton, and that when the vessel arrived at Southampton, and after her cargo had been unloaded, two of the cases of furs were not found and have never been found.

That is all. There was no proof of improper stowage in the hold, and failure to deliver by reason thereof, which has been held to constitute deviation. Niles-Bement-Pond Co. v. Dampkiesaktieselskabet Balto, 2 Cir., 282 F. 235.

It is a simple case of non-delivery, but does this of itself create a presumption of over-carriage or of under-carriage.

The libelant, in one of his causes of action, alleges a deviation. Has he met the burden by simply proving the delivery to the boat and the non-delivery at the point of destination? May he rely alone on this state of facts as proof of an over-carriage, and does this alone create a presumption of over-carriage? I think not. The fact that the goods were in the hold of the vessel at the start of the voyage and were not found to be delivered can create no presumption that they remained in the hold, and were carried beyond Southampton.

I realize that, as has been quoted in libelant's brief, there exists such a thing as a presumption of the continuance of a state or condition once in existence until the object or purpose of the state or condition is completed; for instance, a light is put upon a boat to burn all night, and so, in the absence of evidence to the contrary, it will be presumed to have so burned. Goods received by a carrier in good condition are presumed to remain in that condition until delivered to and received by another carrier in due course of their transportation.

But in this case the goods were received to be transported to Southampton, England. There can be no presumption that they were carried further than Southampton; as was stated in the case of G. W. Sheldon & Co. v. Hamburg Amer. P.A.G., 3 Cir., 28 F.2d 249, 252: "* * * they are not presumed to have been carried beyond their destination contrary to the purpose of the shipment."

The fact that the goods were not discharged by the carrier is no indication that they remained on board. There are many things that could have happened to them, for instance, they might have been removed by a thief after loading and before sailing, or stolen by someone after docking at Southampton and before delivery.

I am of the opinion that libelant has failed to prove sufficient facts under this cause of action to constitute a deviation. Libelant has not furnished me any cases, and neither can I find any, in which such a presumption of over-carriage exists by reason of a non-delivery.

Libelant has cited me many cases on this point, but all of them may be distinguished.

In other words, there was, in each case cited, some positive act or fact whereby the failure of delivery would constitute a deviation, for instance, loading cargo on deck when it should have been in the hold; delay in starting a journey; deviation from port of arrival to another. As a matter of fact, the case relied upon mostly by libelant, on this point, (Buerger v. Cunard Steamship Co. Ltd., 25 Lloyd's List L.R. 215; 32 Times Comm.Cases Part 4, p. 183, decided in June, 1926), may be distinguished on this point alone. In that case there was a non-delivery at Batoum, where part of the goods should have been delivered, but as a matter of fact the goods were actually carried beyond Batoum. This, of course, did constitute a deviation and over-carriage. As to the rest of the goods there was an under-carriage, but this was an actual under-carriage because the goods were delivered to a port prior to the port of agreed delivery. An unexplained failure to deliver has not the same effect as a deviation. Bank of California v. International Mercantile M. Co., 2 Cir., 64 F.2d 97.

Libelants are entitled to a decree herein, in accordance with this opinion.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law, on notice, in accordance therewith.