**ATLANTIC MUTUAL INSURANCE COMPANY, Libellant,**

v.

**POSEIDON SCHIFFAHRT, Respondent.**
**No. 59 C 2005.**

United States District Court
N. D. Illinois, E. D.
April 15, 1962.

Paul H. Heineke and William F. Anderson (of Heineke, Conklin & Schrader), Chicago, Ill., for Atlantic Mut. Ins. Co., libellant.

Warren A. Jackman (of Bradley, Pipin, Vetter & Eaton), Chicago, Ill., for Poseidon Schiffahrt, respondent.

PARSONS, District Judge.

This libel action involves the $500 Limitation of Liability provision of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1304(5). The Libellant, Atlantic Mutual Insurance Company, was assurer of the consignee, Societe Belge Reineveld, of Antwerp, Belgium. The Respondent is the carrier. The goods consisted of certain ironing machine pads in one package, stowed on Respondent's vessel for delivery upon arrival at Antwerp on a day certain. The goods did not arrive as scheduled. Instead, they were located eight months later in Hamburg, Germany.

In the meantime, Libellant assurer had paid the consignees $1,070 pursuant to the insurance contract between them. Approximately eighteen months after the contemplated date of delivery, Respondent delivered the goods to the Libellant. The Libellant, then in turn, offered the goods to the consignee, Societe Belge Reineveld, on condition that the latter would refund the $1,070 that had been paid it, but to this the consignee refused to agree. Later the consignee agreed with its assurer to buy from it the goods for $204.66, the alleged value of the goods to Reineveld at the time it finally received them, and the loss to Libellant, that is, the approximate difference between the amount it paid the consignee for the loss and the amount it received for the goods in mitigation thereof, $725, became the amount sued on in this action.

After having stipulated to certain facts, the parties present the Court here with two questions:

"(1) Is the assurer-libellant entitled to recover as damages from the carrier-respondent the loss it experienced, that is, the difference between the amount it paid the shipper under the policy of assurance and the amount it received from the mitigation of loss sale; and

"(2) If Libellant is entitled to recover from the Respondent, may it recover the full $725 sued for, or is its recovery limited to the $500 set out in the Limitation of Liability provision of the Carriage of Goods by Sea Act, Supra?"

The pertinent provisions of Title 46 U.S.C.A. § 1304, are these:

"(4) Any deviation in saving or attempting to save life or property at sea, or any reasonable deviation shall not be deemed to be an infringement or breach of this Chapter or of the contract of carriage, and the carrier shall not be liable for any loss or damage resulting therefrom: *Provided, however*, That if the deviation is for the purpose of loading or unloading cargo or passengers it shall, prima facie, be regarded as unreasonable"; and

Sub-section (5), which reads:

"(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of

goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This ·declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier  *  *  * "

Prior to the passage of this Act in 1936, there was little doubt that overcarriage beyond and to a different port than the contracted destination was a material "deviation". Niles-Bement-Pond Co. v. D/S A/S Balto, 282 F. 235; General Electric Co. v. Argonaut Steamship Line, Inc., D.C., 7 F.Supp. 710. And in at least one case decided *subsequent* to the Act, it has been recognized that *overcarriage* is a material deviation. Shackman v. Cunard White Star, D.C., 31 F.Supp. 948 (1940). .

A delay of one and one-half years in delivery is in itself a material deviation, regardless of the fact of overcarriage. The Citta Di Messina, 2 Cir., 169 F. 472 (1909); The Hermosa, 9 Cir., 57 F. 2d 20 (1932). All of these cases indicate that such material "deviations" constitute fundamental breaches of the contract of shipment.

There should be no doubt in the instant case that the overcarriage here, coupled with the one and one-half year delay in delivery, constitutes indeed an "unreasonable deviation" justifying rescission of the contract of shipment, under the law, either before or after the enactment of the Carriage of Goods by Sea Act. What happened to the goods was, under the least strict application of the law, an entirely different venture from that contemplated by the parties.

Respondent here cites Hellyer v. Nippon Yesen Kaisya, D.C., 130 F.Supp. 209, in support of its contention that mere non-delivery is not an "unreasonable deviation," and should not be the basis for contract rescission; but the issue here was not actually presented in that case. Although Hellyer may be quoted as stating that *"mere* non-delivery" is not an "unreasonable deviation," the issue there was the effect of "reasonable or unreasonable deviation" upon the determination of the time of delivery for the purpose of applying the limitation of action provision of the Carriage of Goods by Sea Act.

Section 1303(6), Title 46 U.S.C.A. § 1303(6) provides that any action in respect of loss or damages must be brought within one year from the contemplated date of · delivery or from the date of delivery. The question raised by this provision is not present in the instant case, for if we assume delivery to the insurer after payment by the insurer to the shipper of the loss, to constitute delivery to the consignee under the Act, this action was brought within one year after delivery. At any rate, the parties admit that there was no physical loss or damage to the goods. Hence, 46 U.S.C.A. § 1303(6), does not apply to the case at bar. United Merchants & Manufacturers, Inc. v. United States Lines Co., 204 Misc. 989, 126 N. Y.S.2d 560 (1953). In the case before us, we have not only an eighteen months and an unreasonable delay in delivery, if there was at law delivery, but also a material overcarriage from Antwerp, Belgium, to Hamburg, Germany. Accordingly, if the Libellant-Insurer is itself otherwise able to bring this action, there should be no question about the Libellant's right to recover from the Respondent damages resulting from this "deviation".

█ The nature of the contract of insurance here is that of one of indemnity. The rule as to such a contract is that the insurer, or underwriter, after payment of the loss, and after reasonable effort to mitigate damages, is entitled in its own name to salvage anything that may be received from the carrier as a result of the shipment, and, if the insurer is not fully compensated thereby, he may sue and recover from the carrier for the remaining amount of the loss. The

cases are in open agreement on this proposition. Phoenix Insurance Co. v. Erie & W. Transportation Company, 117 U.S. 312, at 321, 6 S.Ct. 750, 29 L.Ed. 873, is the leading citation on this proposition.

Accordingly, I find in the matter before me that Libellant may recover damages from the Respondent, and it is so ordered.

To what extent may Libellant recover poses a more difficult question. Here the nature and value of the goods being shipped were not declared by the shipper before shipment. No such declaration was inserted in the bill of lading. Does this circumstance prevent recovery beyond the limitation of $500 set out in Sub-section (5) of the Act?

■ Had there been in this shipment a *contractual limitation* to liability, there is no question about the fact that such limitation would be inoperative here for the deviation was so unreasonable as to permit rescission of the contract. Contract rescission, if allowed, relates back to the agreement in its inception, and causes the contract in its entirety not to have existed. Many cases have held, and others have recognized, this principle. Farr v. Hain S. S. Company, 2 Cir., 121 F.2d 940; The Hermosa, 9 Cir., 57 F.2d 20; The Lafcomo, D.C., 64 F.Supp. 529. In addition, contractual limitation appears to be superseded by the limitation provided for in the statute.

As for the statutory limitation of liability, several cases apply this same principle and observe that an "unreasonable deviation" also deprives the carrier of the statutory limitation of liability provided in Sub-section (5) of Section 1304. See Jones v. The Flying Clipper, D.C., 116 F.Supp. 386, 387; Isbrandtsen Company v. United States, 2 Cir., 201 F.2d 281; Shackman v. Cunard White Star, D.C., 31 F.Supp. 948.

The case that most clearly attends this issue and argues at length to justify its position is Jones v. The Flying Clipper, supra. The Jones case, after accounting for the rule of law as it existed prior to the enactment of the Carriage of Goods by Sea Act in 1936, as depriving a carrier guilty of an "unreasonable deviation" of the protection of a limited clause in the shipping contract, goes on to hold that the Carriage of Goods by Sea Act did not establish a firm limitation of liability where "unreasonable deviation" is involved.

There is no question about the fact that prior to the enactment of the Carriage of Goods by Sea Act, the doctrine of unjustifiable deviation was firmly entrenched in maritime law. This doctrine had developed to circumvent the efforts of carriers to avoid justifiable liability through insertion in shipping contracts and bills of lading of provisions for minimum limitation of liability. It is equally certain that Congress may not be found to have changed existing law without expressing this change in clear and unmistakable terms. But it appears to this Court that the language of the statute, if it constitutes a change of existing law, according to the rule applied to other statutes, is sufficiently clear and unmistakable. No amount of interpolation is required to evaluate the weight of the phrases "in any event" and "any loss or damage" upon the admonition that "neither the carrier nor the ship shall in any event be or become liable for any loss or damage * * * unless * * *."

It appears from a reading of the statute in its entirety, and from the records of hearings before the Senate Committee on Commerce on Senate Bill 1152, 74th Congress, First Session (1935), Page 47, that the doctrine of "unjustifiable deviation" was not only reaffirmed, but expanded to apply to all breaches of obligation upon notice. For the purpose of applying this statute, I am unable to categorize liabilities into two classes, in the face of the express and clear language of the statute: those resulting from "unjustifiable deviations" and those resulting from other breaches of obligation. Admiralty in its inherent differences of setting from the rest of our body of law has never intended to confine to itself the authority to resist clear

statutory direction, good law, good reasoning and clear legislative intent, by virtue of traditions which justifiably preserve it as a "different" body of law.

In balancing the rights and liabilities of carriers and shippers, Congress clearly expanded the law to impose upon carriers full damage liability; but to impose upon shippers the responsibility of due notice. Under the Act, the carrier, if it has been given notice of the nature and value of the goods, may not assert any limitations of liability, contractual or statutory, but it may adjust its shipping rates and its exercise of special care to reflect its own increased risk. On the other hand, if there is no notice, its liability will extend on the actual value of the goods carried, up to $500 a package, any lesser contractual limitation to the contrary notwithstanding.

Although a "deviation" strips a ship of all excuses in her charter party and imposes upon her at least the liability of a common carrier, which is the liability of an insurer, Farr v. Hain S. S. Company, 2 Cir., 121 F.2d 940 (1941), the clear words of 46 U.S.C.A. § 1304(5), will serve to limit this liability to $500 per package where the value has not been declared. In the case at bar, the acceptance of the goods from the Libellant after the contemplated date of delivery by the shipper did not constitute a waiver of the breach of contract, though it did serve to reduce the measure of the consignee's damages.

Was the consignee damaged to the extent of $725? The Libellant Underwriter undoubtedly was, but this fact does not help the underwriter in a suit against a third party. Phoenix Insurance Company v. Erie and Western Transportation Company, 117 U.S. 312, 6 S.Ct. 750, 29 L.Ed. 873 (1886); United States Merchants' & Shippers' Insurance Company v. A/S Den Norske Afrika OG Australie Line, 2 Cir., 65 F.2d 392 (1933); Standard Marine Insurance Company v. Scottish Metropolitan Assurance Company, 6 Cir., 39 F.2d 436 (1930). For the purposes of this litigation and under the facts of this case, the insurer's rights are derived from the rights which the insured has, and are limited to those rights. "A subrogee stands in the shoes of the subrogor and has no better rights than those possessed by the latter." Berkeley v. United States, 276 F.2d 9, at Page 12.

By payment of a loss, total or partial, under a valid policy in the absence of a provision in the policy to the contrary, the underwriter becomes, by operation of law and without an assignment or transfer, subrogated to all the rights of the insured with regard to that loss, although it may have fully complied with its insurance agreement otherwise.

Since the stipulation here asserts that if Respondent is liable at all, without reference to the package limitation, it is liable to the extent of $725, this Court must not speculate as to what the actual damages of the consignee were. I do, however, hold that the package limitation, set forth in 46 U.S.C.A. § 1304(5), is effective under the facts of this case, and that Libellant is entitled to recover damages to the extent of $500.

And it is so ordered.