313 F.2d 872
 ATLANTIC MUTUAL INSURANCE COMPANY, Libellant-Appellant,
v.
POSEIDON SCHIFFAHRT, G.m.b.H., Respondent-Appellee.
ATLANTIC MUTUAL INSURANCE COMPANY, Libellant-Appellee,
v.
POSEIDON SCHIFFAHRT, G.m.b.H., Respondent-Appellant.
 No. 13826.
 No. 13827.
 United States Court of Appeals Seventh Circuit.
 February 8, 1963.
 Rehearing Denied March 12, 1963.
 
 William F. Andersen, Heineke, Conklin & Schrader, Chicago, Ill., for libellant Atlantic Mut. Ins. Co.
 Warren A. Jackman, Bradley, Pipin, Vetter & Eaton, Chicago, Ill., for respondent Poseidon Schiffahrt.
 Before HASTINGS, Chief Judge, CASTLE and MAJOR, Circuit Judges.
 HASTINGS, Chief Judge.
 
 
 1
 This is an action in admiralty to recover damages for breach of contract for the carriage of cargo between Chicago, Illinois and Antwerp, Belgium. The case was submitted to the district court on a stipulation of facts. The district court in its memorandum opinion and order held that libellant, Atlantic Mutual Insurance Company, should recover damages; that overcarriage of the goods to Hamburg, Germany and delay of a year and a half in making delivery at Antwerp was an unreasonable deviation; and that libellant's recovery was limited to $500 pursuant to the package limitation of § 4(5) of the Carriage of Goods by Sea Act, Title 46, U.S.C.A. § 1304(5).
 
 
 2
 Libellant appealed, claiming the district court erred in limiting its recovery to $500. Respondent, Poseidon Schiffahrt, G. m. b. H., cross appealed, claiming libellant had failed to properly prove any damages.
 
 
 3
 About November 17, 1957, at Chicago, Illinois, Resillo Company delivered one carton containing ironing machine pads to respondent for transportation to Antwerp, Belgium on board respondent's vessel, SS Herman Schulte. The goods were consigned to order of shipper and had been sold by shipper to consignee, Societe Belge Reineveld of Brussels, Belgium. The bill of lading did not contain an excess valuation pursuant to 46 U.S.C.A. § 1304(5).
 
 
 4
 The carton was not delivered to consignee upon arrival of the SS Herman Schulte at Antwerp about December 14, 1957. Instead, it was located eight months later in Hamburg, Germany.
 
 
 5
 In the meantime, libellant had paid consignee $1,070 for its loss pursuant to the insurance contract between them.
 
 
 6
 On June 16, 1959, approximately eighteen months after the contemplated date of delivery, respondent delivered the goods to libellant. Libellant then offered the goods to consignee on condition that the latter would refund the $1,070 that had been paid it, but consignee refused.
 
 
 7
 After making efforts without success to find other purchasers, libellant sold the ironing machine pads to consignee for the net sum of $204.66. It was stipulated by the parties that this was the highest bid received from consignee.
 
 
 8
 The amount sought by libellant in this action, $725, represents the approximate difference between the amount it paid consignee for the loss and the amount libellant received from consignee in mitigation.
 
 
 9
 We must first determine whether the district court was correct in holding that respondent was guilty of an unreasonable deviation.
 
 
 10
 Section 4(4) of the Carriage of Goods by Sea Act (herein called the Act), 46 U.S.C.A. § 1304(4) provides:
 
 
 11
 "Any deviation in saving or attempting to save life or property at sea, or any reasonable deviation shall not be deemed to be an infringement or breach of this chapter or of the contract of carriage, and the carrier shall not be liable for any loss or damage resulting therefrom: Provided, however, That if the deviation is for the purpose of loading or unloading cargo or passengers it shall, prima facie, be regarded as unreasonable."
 
 
 12
 This section contains the only reference to "deviation" found in the Act. It does not define "unreasonable" deviation nor does it declare what the legal effect of an unreasonable deviation shall be. It is our opinion that by this section Congress recognized the doctrine of deviation as it had developed in maritime law but chose to make the carrier liable only for an unreasonable deviation.
 
 
 13
 We agree with the district court's analysis of the law on this point. In its memorandum opinion it stated:
 
 
 14
 "Prior to the passage of this Act in 1936, there was little doubt that overcarriage beyond and to a different port than the contracted destination was a material `deviation'. Niles-Bement-Pond Co. v. D/S A/S Balto, [2 Cir.] 282 F. 235; General Electric Co. v. Argonaut Steamship Line, Inc., [D.C.] 7 F.Supp. 710. And in at least one case decided subsequent to the Act, it has been recognized that overcarriage is a material deviation. Shackman v. Cunard White Star, D.C., 31 F.Supp. 948 (1940).
 
 
 15
 "A delay of one and one-half years in delivery is in itself a material deviation, regardless of the fact of overcarriage. The Citta di Messina, 2 Cir., 169 F. 472 (1909); The Hermosa, 9 Cir., 57 F.2d 20 (1932). All of these cases indicate that such material `deviations' constitute fundamental breaches of the contract of shipment.
 
 
 16
 "There should be no doubt in the instant case that the overcarriage here, coupled with the one and one-half year delay in delivery, constitutes indeed an `unreasonable deviation' justifying rescission of the contract of shipment, under the law, either before or after the enactment of the Carriage of Goods by Sea Act. What happened to the goods was, under the least strict application of the law, an entirely different venture from that contemplated by the parties."
 
 
 17
 As a result of the rescission of the contract of carriage arising out of the unreasonable deviation, the contract is treated as not having existed, and the liability of the carrier becomes that of an insurer. S. S. Willdomino v. Citro Chemical Co., 272 U.S. 718 [47 S.Ct. 261, 71 L.Ed. 491] (1927).
 
 
 18
 The district court held, however, that respondent's liability was limited to $500 by § 4(5) of the Act, 46 U.S.C.A. § 1304(5). We agree. This section of the Act provides:
 
 
 19
 "Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States * * * unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. * * *" (Emphasis added.)
 
 
 20
 It appears that the specific problem under consideration here has been discussed in only one other case. Jones v. The Flying Clipper, D.C.S.D.N.Y., 116 F.Supp. 386 (1953). The parties have cited only this case, and our research has revealed no other. In the Jones case, the court held this limitation inapplicable where the carrier was guilty of an unreasonable deviation. While that case is distinguishable because the Act did not apply there of its own force but by incorporation in the bill of lading, the district court stated that this factor would not change the result.
 
 
 21
 In Jones, the court reasoned that the doctrine of deviation was so firmly entrenched in maritime law that such a drastic change would have been expressed in clear and unmistakable language. The court found no such language in the Act.
 
 
 22
 We respectfully disagree with this reasoning and adopt that of the district court in the instant case:
 
 
 23
 "There is no question about the fact that prior to the enactment of the Carriage of Goods by Sea Act, the doctrine of unjustifiable deviation was firmly entrenched in maritime law. This doctrine had developed to circumvent the efforts of carriers to avoid justifiable liability through insertion in shipping contracts and bills of lading of provisions for minimum limitation of liability. It is equally certain that Congress may not be found to have changed existing law without expressing this change in clear and unmistakable terms. But it appears to this Court that the language of the statute, if it constitutes a change of existing law, according to the rule applied to other statutes, is sufficiently clear and unmistakable. No amount of interpolation is required to evaluate the weight of the phrases `in any event' and `any loss or damage' upon the admonition that `neither the carrier nor the ship shall in any event be or become liable for any loss or damage * * * unless * * *.'"
 
 
 24
 In addition to the reasons stated by the district court, our conclusion finds support in the fact that the package limitation immediately follows § 4(4) of the Act, 46 U.S.C.A. § 1304(4) in which Congress, as we have already stated, recognized the carrier's liability for unreasonable deviations. It is difficult for us to believe that Congress did not intend this limitation to apply to the section next preceding it.
 
 
 25
 Respondent contends on its cross appeal that libellant failed to sustain its burden of proof of damages without showing the actual loss sustained by consignee. We do not agree.
 
 
 26
 Where goods over which suit is brought are not recoverable, the measure of damage is the value of the goods at the intended destination. St. Johns N. F. Shipping Corp. v. Companhia Geral, etc., 263 U.S. 119, 44 S.Ct. 30, 68 L.Ed. 201 (1923). In the case of damaged goods the measure of damage is the difference between market value of the goods at destination in the condition in which they should have arrived and market value of the goods at destination in the condition in which they arrived. Ansaldo San Giorgio I v. Rheinstrom Co., 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016 (1935); Reider v. Thompson, 5 Cir., 197 F.2d 158 (1952).
 
 
 27
 We hold that under the circumstances of the instant case the proper measure of damages was the difference between market value of the goods at the time and place they should have arrived and market value of the goods when they arrived.
 
 
 28
 We recognize that libellant is claiming rights obtained by subrogation, and the damages recovered must be those suffered by consignee. The sale by libellant to consignee, after unsuccessful attempts to sell to others, constitutes prima facie evidence of the diminution in value of the goods and thus, the extent of damage to consignee.
 
 
 29
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 30
 Affirmed.